DECLARATION OF MARY RONAN

I, Mary Ronan, hereby declare:

1.  I am the Director of the Access Management Office for the National Security Staff (NSS), Washington, D.C. The NSS is a component of the Executive Office of the President (EOP). I have served in this position since 2006, when the Staff for the National Security Council (NSC) was known as the National Security Council Staff. Now the NSS encompasses the staff of both the NSC and the Homeland Security Council (HSC). Prior to my service at the White House complex, I held similar positions in the National Archives and Records Administration. In my current position, I have been delegated classification and declassification authority in accordance with the provisions of Executive Order 13526.

2.  Among my duties as Director of Access Management for the NSS, I am responsible for handling document referrals from federal agencies seeking guidance as to whether NSS records in their custody may be released. In executing this function, I determine whether information that is requested from NSS records may be declassified consistent with Executive Order 13526, or whether it must remain classified to protect the national security interests of the United States. In consultation with counsel, I also help determine whether information that is

requested from NSS records is subject to a claim of privilege, and therefore whether its release would adversely affect important presidential interests.

3. Section 1.3(a) of Executive Order 13526 provides that the authority to classify information originally may be exercised only by the President and, in the performance of executive duties, the Vice President; agency heads and officials designated by the President in the Federal Register; and United States Government officials delegated this authority pursuant to section 1.3(c) of the Order. Section 1.3(c)(2) provides that TOP SECRET original classification authority may be delegated only by the President; in the performance of executive duties, the Vice President; or an agency head or official designated pursuant to section 1.3(a)(2) of the Order. Section 1.3(b) of the Executive Order provides that original TOP SECRET classification authority includes the authority to classify information originally as SECRET and CONFIDENTIAL. As an original classification authority, I am authorized to conduct classification reviews and to make original classification decisions.

4. I have reviewed and am generally familiar with the request for records made by Electronic Privacy Information Center ("EPIC") that is the subject of the litigation in EPIC v. National Security Agency, No. 10-00196 (BAH). The subject of

the EPIC request is (among other things) National Security Presidential Directive-54/Homeland Security Presidential Directive-23 ("NSPD-54").

5. The NSS is the original classification authority for NSPD-54. In March 2010, I completed an initial classification review of NSPD-54, made certain classification adjustments to a number of paragraphs, and ultimately determined that the document as a whole was properly classified as TOP SECRET, for reasons consistent with the rationale I describe below.

6. During the week of October 4, 2011, the NSS received a request to conduct another classification review of NSPD-54. Once again, I personally reviewed NSPD-54 in order to respond to the request.

7. NSPD-54 is a confidential communication from the President of the United States to a select and limited group of senior foreign policy advisors, cabinet officials, and agency heads on the subject of cybersecurity policy. The directive was originally accompanied by a transmittal memo from a Special Assistant to the President who was the HSC's Executive Secretary, which was distributed to all recipients. The memo emphasized NSPD-54's close-hold nature and the need to safeguard its content, a need that continues to this day. Specifically, the cover memo explained that NSPD-54 communicates presidential decisions and orders that require careful safeguarding. The

memo prohibited dissemination of the document beyond its authorized recipients without White House approval and further instructed that even within receiving agencies, copies should be distributed only on a need to know basis.

8. NSPD-54 as a whole is classified as TOP SECRET. Individual paragraphs within NSPD-54 have different classification markings ranging from UNCLASSIFIED to, SECRET, and TOP SECRET.

9. Title 5 U.S.C. Section 552(b)(1) states that FOIA does not apply to matters that are "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy," and "(B) are in fact properly classified pursuant to such Executive order."

10. I have personally reviewed NSPD-54 and have concluded that the information marked classified in this document continues to meet the classification criteria of E.O. 13526 and should therefore be withheld pursuant to FOIA Exemption (b)(1).

11. I have determined that, as understood under E.O. 13526, the information in this document that has been classified as TOP SECRET constitutes information the unauthorized disclosure of which could reasonably be expected to cause exceptionally grave damage to the national security. I have also determined that, as understood under E.O. 13526, the

information in this document that has been classified as SECRET constitutes information the unauthorized disclosure of which could reasonably be expected to cause serious damage to the national security. The information contained within NSPD 54 has been and remains properly classified under Sections 1.4(c), because it involves intelligence activities or intelligence sources and methods; 1.4(d), because it involves foreign relations or foreign activities of the United States; 1.4(e), because it concerns scientific, technological, or economic matters relating to the national security; and 1.4(g), because it involves vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security.

12. I have also determined that the information contained within NSPD-54 has not been classified in order to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.

13. While it is possible to segregate parts of NSPD-54 that can be released consistent with FOIA exemption (b)(1) without adversely affecting the national security of the United States, NSPD-54 should be withheld in full under FOIA exemption

b(5). NSPD-54 is a confidential communication from the President of the United States to a select and limited group of senior foreign policy advisors, cabinet officials, and agency heads, including (*inter alia*) the Directors of NSA and the Office of Management and Budget, and the Secretaries of State, Defense, Homeland Security, and Treasury. The directive communicates presidential decisions and orders designed to improve the internal workings of the Executive Branch – specifically, a variety of actions designed to increase the security of federal cyber assets and improve the federal government's capacity to deter and respond to various threats to federal systems and information. Moreover, NSPD-54 solicits follow-up information from the same Departments and Agencies to the President, at least one purpose of which is to measure the efficacy of the President's chosen courses of action.

14. Disclosure of even the unclassified material contained in NSPD-54 would undermine the President's ability to communicate confidentially with his senior advisors, cabinet officials, and agency heads on sensitive matters that fall within his core constitutional duties – namely, the development of a coordinated strategy within the Executive Branch to protect the nation from cyber security risks. Disclosure would reveal the form and content of sensitive Presidential deliberations, thereby sacrificing the confidentiality necessary to ensure that

the President receives candid and timely advice. Moreover, disclosure would interfere with the President's ability to communicate his decisions confidentially, which would frustrate his ability to exercise control over the executive branch. More generally, disclosure of NSPD 54 would undermine the ability of federal officials to communicate effectively on efforts to promote cybsersecurity – a confidential process that the President deemed important to achieving the purposes of NSPD 54. Thus, disclosure of NSPD-54 would impede the President's ability to perform his constitutional duties.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Mary Ronan
Director, Access Management
National Security Staff

Executed on: October 11, 2011.