**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
ELECTRONIC PRIVACY                  )
INFORMATION CENTER                 )
                                                    )
                    Plaintiff,                   )
                                                    )
          v.                                      )          Case No. 1:10-cv-00196-BAH
                                                    )
NATIONAL SECURITY AGENCY    )
                                                    )
                                                    )
                                                    )
                    Defendant.                )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

In responding to Defendant's motion for summary judgment and in advancing its

own cross-motion for summary judgment, Electronic Privacy Information Center

("EPIC" or "Plaintiff") offers little substantive opposition to the applicability of the

presidential communications privilege to National Security Presidential Directive 54

("NSPD 54").  Instead, EPIC focuses on procedural objections that, under the clear

dictates of the D.C. Circuit and this Court, are not available in an action arising under the

Freedom of Information Act ("FOIA").  As demonstrated below, these objections – as to

the method of invocation of the presidential communications privilege, Plaintiff's

putative "need" for disclosure, and other issues – have no bearing on a FOIA lawsuit and

are only plausibly relevant to instances where the presidential communications privilege

is invoked in the course of civil discovery.  The only relevant issue is thus whether the privilege substantively applies under Exemption 5, a subject on which EPIC offers little genuine argument.  NSA therefore properly withheld NSPD 54, and this Court should grant Defendant's motion for summary judgment.

EPIC similarly has offered no substantive counter-argument to the application of FOIA Exemption 3 (for material exempted from disclosure by statute) or FOIA Exemption 1 (for material that has been properly classified).

Accordingly, for all of the reasons discussed below and in NSA's opening brief, this Court should grant NSA's motion for summary judgment and deny EPIC's cross-motion for summary judgment.

## **ARGUMENT**

### I.      **Plaintiff Does Not Dispute that NSPD 54 is a Confidential Presidential Communication, And Therefore Cannot Dispute Application of Exemption 5.**

Instead of squarely disputing the substantive applicability of Exemption 5 to NSPD 54, Plaintiff raises a variety of procedural objections to the application of the presidential communications privilege prong of Exemption 5 or supposedly countervailing reasons why the Exemption should not be honored by this Court.  Because none of these objections has merit, and because Plaintiff does not dispute that NSPD 54 constitutes a confidential presidential communication, this Court should grant summary judgment with regard to NSA's withholding of NSPD 54.

**A. Neither the method of invocation of the presidential communications privilege nor Plaintiff's self-assessed "need" for disclosure of NSPD 54 has any bearing on the application of Exemption 5.**

Plaintiff's opposition largely focuses on non-substantive reasons for denying summary judgment, arguing that the President was required to personally invoke the presidential communications privilege and that EPIC's "need" for disclosure justifies piercing the privilege. However, these arguments are squarely foreclosed by the caselaw of this Court and the D.C. Circuit, which makes clear that formal "invocation" of the presidential communications privilege is not required under Exemption 5 and that a Plaintiff's need for disclosure does not provide a basis for denying application of Exemption 5.

**1. The President is not required to personally invoke Exemption 5.**

Plaintiff primarily argues that Exemption 5 should not apply unless the President of the United States personally "invokes" the privilege. Plaintiff Opp. at 11-13. This is plainly incorrect, as this Court has held on multiple occasions. *See, e.g.*, *Citizens for Responsibility & Ethics v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 48 n.10 (D.D.C. 2007) ("[T]he President does not need to personally invoke the presidential communications privilege to withhold documents pursuant to FOIA Exemption 5." (citing cases)). In fact, EPIC has previously raised this identical argument to this Court, only to have the Court respond, in accordance with clear caselaw, that the President need not personally invoke the presidential communications privilege. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 584 F. Supp. 2d 65, 80-81 (D.D.C. 2008) ("DOJ is correct that

the presidential communications privilege does not need to be asserted by the President himself.  There is no indication in the text of FOIA that the decision to withhold documents pursuant to Exemption 5 must be made by the President.").

Although personal invocation of a privilege may be required in civil discovery, this Court has made clear that invocation by the President is not required in the FOIA context.  *Lardner v. U.S. Dep't of Justice*, 2005 WL 758267, at \*7 (D.D.C. 2005)  ("For several reasons, this Court concludes that the personal invocation of the presidential communications privilege is also a civil discovery rule that should not be imported into the FOIA analysis."); *Loving v. U.S. Dep't of Defense*, 496 F. Supp. 2d 101, 108 (D.D.C. 2007) ("Plaintiff also notes that it is 'unclear' whether the President has personally invoked the presidential communications privilege with respect to the documents at issue, but personal invocation is not required as to FOIA requests.").

Plaintiff's approach reflects a fundamental misunderstanding about the functioning of FOIA's statutory exemptions:  As this Court has explained, whereas a discovery privilege may require consideration of a variety of procedural factors, application of FOIA Exemption 5 turns only on the "**content or nature** of [the] document" and not the "**manner** in which the exemption is raised in a particular request."  *Lardner*, 2005 WL 758267 at \*7 (emphasis in original).  Because documents covered by Exemption 5 are *per se* "exempt" from FOIA's production requirements by operation of the statute, the only relevant question is whether a document "fall[s] within the ambit" of a privilege, not the procedure employed to reference that privilege.  *Id.* at \*5 (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001)).

4

Plaintiff's citation (Plaintiff Opp. at 11) to *Cheney v. U.S. District Court for the District of Columbia* is therefore irrelevant, as that case involved the invocation of presidential communications privilege in the course of civil discovery.  542 U.S. 367, 389 (2003).  And, as discussed above, the procedural requirements for invoking the presidential communications privilege during civil discovery categorically do not apply to FOIA requests.[1]

Plaintiff also suggests that Executive Order 13489 requires personal invocation of the presidential communications privilege (Plaintiff Opp. at 12).  But Executive Order 13489 does not impose any such requirement.  First, the Executive Order does not substantive apply to NSPD 54.  By its own terms, Executive Order 13489 governs the "release of Presidential records by the National Archives and Records Administration (NARA) pursuant to the Presidential Records Act of 1978."  74 Fed. Reg. 4669.   But Plaintiff has not requested a copy of NSPD 54 from the National Archives; it has filed a FOIA request with the NSA, which is not the subject of the cited Executive Order.

---

[1] Relatedly, Plaintiff's claim that the presidential communications privilege only applies where disclosure would impose a significant burden on the President is also baseless. Application of the privilege arises due to separation of powers concerns and the "need for confidentiality in the communications of [the] office" of the President, and therefore turns on the nature of the communications at issue.  *See Judicial Watch v. Department of Justice*, 365 F.3d 1108, 1115 (D.C. Cir. 2004) (citing *United States v. Nixon*, 418 U.S. 683, 712-13 (1974)).  Although the prospect of burden on the President provides an additional reason to avoid forcing the President to disclose confidential communications, Plaintiff has cited no authority suggesting that the presidential communications privilege only applies where necessary to avoid document processing burdens.  And the D.C. Circuit has routinely upheld application of the presidential communications privilege with no discussion of whether application of the privilege was necessary to alleviate the burden of processing documents.  *See, e.g.*, *Loving v. Dep't of Defense*, 550 F.3d 32, 37-38 (D.C. Cir. 2008); *Judicial Watch*, 365 F.3d at 1123.

Relatedly, Executive Order 13489 applies only to "the release of Presidential records . . .

pursuant to the Presidential Records Act" or to the "disclos[ure] of Presidential records

pursuant to section 1270.46 of the NARA regulations," and only applies *after* the

Archivist of the United States notifies the "President[] of his intent to disclose

Presidential Records."  74 Fed. Reg. 4669, 4669.  The Executive Order has no bearing on

this FOIA request, which (self-evidently) did not arise under the Presidential Records Act

and has not triggered a decision by the Archivist to release presidential records.  Finally,

the cited Executive Order, by its plain terms, does not "create any right or benefit,

substantive or procedural, enforceable at law or in equity by any party against the United

States, its departments, [or] agencies."  *See* 74 Fed. Reg. 4669, 4670.  Thus, Executive

Order 13489 cannot create a procedural right for plaintiff where such a procedural right is

otherwise unavailable.

       Accordingly, the method by which Exemption 5 was asserted has no bearing on

this motion.[2]

---

[2] Plaintiff similarly argues that the presidential communications privilege is unavailable
unless the subject document explicitly contains the word "confidential."  Plaintiff Opp. at
13.  This procedural objection is likewise invalid.  As discussed in significant detail in the
both the Ronan and Janosek declarations, recipients of NSPD 54 were clearly instructed
as to the sensitivity of the document, the safeguarding required for the document, and the
limits on its distribution.  *See* Ronan Declaration ¶ 7; Janosek Declaration ¶¶ 32-33.
Plaintiff has cited no basis for requiring the use of talismanic words as a prerequisite for
application of the presidential communications privilege, and any such arbitrary
requirement would, of course, undermine the recognition that presidential decision
making, by its very nature, demands confidentiality, regardless of whether any particular
verbal formula is actually used by the President.  *See, e.g.*, *Loving*, 550 F.3d at 37-38.

## 2. Exemption 5 applies regardless of a plaintiff's need for a document embodying presidential communications.

Plaintiff relatedly attempts to escape application of Exemption 5 by citing its putative need for the NSPD 54.  Plaintiff Opp. at 12, 18-21.  Again, Plaintiff confuses invocation of a discovery privilege with the assertion of a statutory exemption under FOIA.  Although need may be a relevant factor in evaluating application of the presidential communications privilege in the civil discovery context, a plaintiff's need cannot disturb application of Exemption 5 in the FOIA context.

The D.C. Circuit has previously rejected this identical argument.  In response to a plaintiff's effort to argue that "the presidential communications privilege . . . is presumptive and can be overcome by a sufficient showing of need," the D.C. Circuit agreed that "this principle is inapplicable to FOIA, where the particular need of the applicant is not relevant" and that the presidential communications privilege "is insurmountable."  *Loving*, 550 F.3d at 40 (interal citations omitted).  And this Court has likewise held that "the need of a plaintiff for a privileged document is irrelevant to the Exemption 5 inquiry."  *Lardner*, 2005 WL 758267 at *7 (citing sources).[3]

Accordingly, EPIC cannot resist the instant motion for summary judgment by citing its putative need for the disclosure of NSPD 54.[4]

---

[3] Although not in any way relevant to whether Exemption 5 applies, it bears noting that Plaintiff has not seemingly cited any actual need for NSPD 54.  Plaintiff generally cites to a supposed public interest in disclosure, but has not described any actual institutional reason why EPIC uniquely needs this Court to order disclosure of NSPD 54.

[4] In another invented effort to qualify the presidential communications privilege, EPIC suggests that this Court should order the release of "segregab[le]" portions of NSPD 54.  But this approach has been squarely rejected by the D.C. Circuit, which has repeatedly

### B. Plaintiff's substantive objections to the application of Exemption 5 have no merit.

Plaintiff's substantive objections to the application of Exemption 5 fare no better than the inapplicable procedural objections discussed above.

Notably, at no point has Plaintiff contested certain core attributes of NSPD 54: that the document was authored by the President, was distributed confidentially to high ranking advisors, and solicited confidential feedback in return. *See* NSA Opening Br. at 9-11; Janosek Decl ¶¶ 8, 31; Ronan Decl. ¶¶ 7, 13. These various aspects of NSPD 54, which Plaintiff has not contested, render the application of the presidential communications privilege wholly noncontroversial.

### 1. The scope of NSPD 54's distribution within the Executive Branch does not affect application of Exemption 5.

Plaintiff argues that the presidential communications privilege does not apply in this case because NSPD 54 has been shared with "staff outside the White House in executive branch agencies." Plaintiff Opp. at 14 (citing *In re Sealed Case* and *EPIC v. Dep't of Justice*). However, the caselaw cited by Plaintiff does not support this proposition.

*In re Sealed Case* and *EPIC v. Department of Justice* involved application of the presidential communications privilege to communications that did not directly involve the President. In such circumstances, the D.C. Circuit held that the privilege could not apply unless high ranking White House advisors were involved in the communication.

---

held that where the presidential communications privilege applies, the entire document is exempt from disclosure. *See, e.g.*, *Loving*, 550 F.3d at 37-38; *Judicial Watch*, 365 F.3d 1108 at 1114; *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997).

Or, put otherwise, the D.C. Circuit held that the presidential communications privilege *would* apply to certain communications involving White House advisors *even if the President was not directly involved in the communications*.  *In re Sealed Case*, 121 F.3d at 751-52; *see also EPIC v. Dep't of Justice*, 584 F. Supp. 2d 65, 80-81 (D.D.C. 2008) (same holding).  But this doctrine – as to the reach of the presidential communications privilege in the absence of an actual presidential communication – has absolutely no bearing on NSPD 54, which was directly issued by the President.

Moreover, Plaintiff has cited no authority suggesting that the President's entitlement to confidentiality dissipates if he chooses to communicate with high-ranking executive branch officials outside of his immediate circle of White House advisors.  Instead, in assessing application of the presidential communications privilege, Plaintiff's inability to contest any of NSPD 54's critical attributes – including (*inter alia*) the President's authorship of NSPD 54, the document's inherent sensitivity, and the document's solicitation for confidential reporting – ends the inquiry as to whether the privilege applies.[5]

---

[5] Although Plaintiff argues that the presidential communications privilege applies less forcefully to a *former* President's confidential communications (*see* Plaintiff Opp. at 12, 18), this Court has regularly applied the presidential communications privilege to documents associated with former Presidents, with no suggestion that the privilege applied any less forcefully as a result of the change in administrations.  *See, e.g.*, *Judicial Watch*, 365 F.3d at 1123 (upholding privilege over Clinton Administration documents, in FOIA litigation brought during the Bush Administration).  Once again, the only cases Plaintiff cites in support of this proposition arose in the civil discovery context as opposed to the FOIA context.  *See* Plaintiff Opp. at 12, 18 (citing *In re Sealed Case*).  And, as discussed throughout this filing, qualifications to the presidential communications privilege that apply in the discovery context do not apply to the FOIA

### 2. NSPD 54's relevance for Executive Branch activities does not alter the applicability of Exemption 5.

In various ways, Plaintiff argues that NSPD 54's controlling impact on certain executive branch cybersecurity efforts renders the presidential communications privilege unavailable. Plaintiff Opp. at 14-16. Plaintiff suggests that National Security Presidential Directives are equivalent to Executive Orders, that they allow for "secret law," and that they even exceed the President's constitutional responsibilities. *Id.* The upshot of all of these arguments is the same: that Exemption 5 should cease to apply because NSPD 54 may have some practical effect on Executive Branch operations.

There is no basis for or logic behind this constricted approach to Exemption 5. Once again, by attempting to limit application of the presidential communications privilege to "deliberations and investigations" (Plaintiff Opp. at 15), "EPIC appears to confuse the presidential communications privilege with the deliberative process privilege." *Elec. Privacy Info. Ctr.*, 584 F. Supp. 2d at 80-81. This Court and the D.C. Circuit have repeatedly made clear that the presidential communications privilege applies to post-decisional documents and orders from the President. *Id.*; *see also, e.g.*, *Judicial Watch*, 365 F.3d at 1113-1114. As such, Plaintiff cannot claim to be surprised that a privilege designed to protect the confidentiality of communications to and from the President of the United States protects from disclosure certain communications that have an effect on government operations.

---

context, where the presidential communications privilege "is insurmountable." *Loving*, 550 F.3d at 40.

By definition, a document embodying a presidential communication may be *from* the President – the Chief Executive of the federal government.  And presidential decisions are likely to have significant impact on Executive Branch activities.[6]

For this reason, Plaintiff's "secret law" charge is inapplicable.  Plaintiff Opp. at 16.  The "secret law" phrase derives from *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), where the Supreme Court unremarkably held that the deliberative process privilege could not shield the specific post-decisional documents at issue in that case from disclosure.  The D.C. Circuit has made clear that the "secret law" doctrine functions as a limitation on the deliberative process privilege, and requires the "disclosure of post-decisional documents" that "follow[] the adoption of a policy" even though the documents would be exempt from disclosure under the deliberative process privilege before the policy's adoption.  *See, e.g.*, *Quarles v. Dep't of the Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990).  But this doctrine does not apply to the presidential communications privilege which, as the D.C. Circuit has repeatedly recognized, applies with full force to post-decisional documents.  *Judicial Watch*, 365 F.3d at 1113-1114; *In re Sealed Case*, 121 F.3d at 744-45.  Instead, because the privilege seeks to protect the confidentiality of *presidential* decisionmaking – *i.e.*, decisions and communications from the United States'

---

[6] Additionally, the analogy to executive orders is irrelevant because NSA has not asked this Court to categorically hold that all National Security Presidential Directives are privileged.  Instead, NSA has simply argued that the presidential communications privilege applies to NSPD 54 – a conclusion necessitated by certain characteristics of this document, including the document's presidential authorship, close distribution safeguards, and requests for confidential, follow-up reporting.  *See* Ronan Decl. ¶ 7, 13; *see also Judicial Watch*, 365 F.3d at 1113-1114; *In re Sealed Case*, 121 F.3d at 744-45.

chief executive – the privilege would prove hollow if it did not apply to decisions that are final and, considering their source, highly relevant to actual government activity.

Instead, as discussed in NSA's opening brief, application of the presidential communications privilege turns on the source of a communication, the confidentiality of the communication, and the type of communication involved (an inquiry that, in part, looks to whether a presidential communication seeks confidential feedback).  Plaintiff has not disputed the source of NSPD 54, its confidentiality, or its content.  Accordingly, Exemption 5 clearly applies.[7]

## II.    The Cited Sections of NSPD 54 and the Item Three Documents Have Been Properly Classified.

The Janosek and Ronan declarations provided the factual basis for the application of Exemption 1 to certain redacted portions of NSA Policy 1-58 and IAD Management Directive 20 – the two documents produced during NSA's Supplemental Production as responsive to the third item in the FOIA Request (the "Item Three Documents") – and to certain portions of NSPD 54.  Plaintiff has raised no substantive objection to these

---

[7] Plaintiff's argument that "NSPD 54 falls outside of the President's constitutional authority," Plaintiff Opp. at 16-17, is likewise misplaced.  First, contrary to Plaintiff's attempt to restrict the application of the presidential communications privilege to documents reflecting core presidential functions, this Court has held that the presidential communications privilege is not limited to "non-delegable powers" of the President. *United States v. Philip Morris United States*, 2004 U.S. Dist. LEXIS 24517, 19-20 (D.D.C. 2004).  Second, Plaintiff's concerns about the President's authority to issue NSPD 54 have no bearing on whether the privilege applies; the applicability of the privilege, as discussed herein, depends on the nature of the communication and not the nature of the ends being pursued through the presidential communication.  Finally, even if such considerations were relevant to the Exemption 5 assessment, the President's responsibility to safeguard federal asserts (including cyber-assets) plainly falls within his constitutional responsibilities as chief executive of the federal government.

classification decisions, and has instead only disputed whether Ms. Janosek and Ms.

Ronan possess original classification authority.  Plaintiff Opp. at 24.

　　　This objection, as a matter of law, provides an insufficient basis for opposing

summary judgment.  Both Ms. Ronan and Ms. Janosek have submitted declarations

attesting to their possession of original classification authority.  *See* Janosek Decl., ¶ 1,

19-23; Ronan Decl. ¶ 1-12.  As the D.C. Circuit has explained, such an agency

declaration provides a sufficient basis for summary judgment absent contrary evidence or

evidence of bad faith by the agency.  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

　　　Here, Plaintiff has offered no contrary evidence disputing either Ms. Ronan's or

Ms. Janosek's classification authority.  Absent such contrary evidence, this and other

courts have held that a Plaintiff may not defeat the assertion of Exemption 1 simply by

raising speculative claims as to whether the government's declarants have misrepresented

their classification authority.  *See, e.g.*, *Darui v. U.S. Dep't of State*, 2011 U.S. Dist.

LEXIS 73848, at *15 (D.D.C. July 11, 2011) ("Grafeld's declaration establishes that she

is a proper classifying authority.  Plaintiff's attempt to refute this fact is unpersuasive.

Plaintiff proffers no evidence to support his contentions that Grafeld lacks the authority

to classify information, that Grafeld is perjuring herself in her declaration, or that she has

failed to comply with the Executive Order's requirements for classification authority.");

*see also Pipko v. CIA*, 312 F. Supp. 2d 669, 678 (D.N.J. 2003) ("The only challenge

Plaintiff makes to Defendant's use of FOIA exemption (b)(1) . . . is the claim that the

McNair Declaration fails to demonstrate that McNair is an 'original classification

authority' . . . . Plaintiff provides no support for this assertion.  McNair declared, under

oath, that . . . [he] holds original classification authority at the TOP SECRET level. . . .
Therefore, Plaintiff's argument fails.").

Having failed to raise any substantive objection to the invocation of Exemption 1,
Plaintiff cannot avoid summary judgment simply by speculating as to whether the
government declarants perjured themselves in describing their classification authority.[8]

## III.   Exemption 3 Applies to the Cited Sections of NSPD 54 and the Item Three Documents.

Additionally, Plaintiff has not in any material way disputed the applicability of
Exemption 3 to the cited sections of NSPD 54 and the Item Three documents.

In its opening brief, NSA cited three statutes that specifically exempted the
requested material from disclosure.  Plaintiff's opposition disputes the application of only
one of these three statutes (18 U.S.C. § 798), and argues that the cited statute could not
apply because the cited material was not properly classified.  As demonstrated above,
however, Plaintiff's classification objections are meritless.  18 U.S.C. § 798 therefore
applies in full force.

Even if 18 U.S.C. § 798 did not apply (which it does), NSA would still be entitled
to summary judgment on the basis of the other statutes cited in NSA's opening brief –
about whose application Plaintiff has offered no opposition.  For example, Plaintiff has
not disputed the application of Section 6 of the National Security Agency Act of 1959,

---

[8] Plaintiff argues that Exemption 1 does not apply to NSPD 54 in its entirety.  Plaintiff
Opp. at 24-25.  But NSA's motion did not claim that the entire NSPD 54 document is
exempt in full from disclosure under Exemption 1.  Instead, NSA has argued that
Exemption 1 applies to those portions of NSPD 54 that have been and remain properly
classified.

Public Law 86-36 (50 U.S.C. § 402 <u>note</u>), which broadly exempts the NSA from disclosing its operational details.  As the Janosek Declaration makes clear, this statute plainly applies to the various, cited provisions of NSPD 54 and the Item Three documents and thereby exempts those provisions from disclosure under Exemption 3.  Having failed to contest the application of these other statutes, Plaintiff cannot genuinely dispute the necessity of summary judgment with regard to the cited provisions of NSPD 54 and the Item Three documents.[9]

## IV.   Plaintiff Cannot Rewrite The Second Provision of its FOIA Request to Escape Summary Judgment.

Item 2 of Plaintiff's FOIA request sought "the full text, including previously unreported sections, of the Comprehensive National Cybersecurity Initiative, as well as any executing protocols distributed to the agencies in charge of its implementation."  As described in NSA's opening motion and in the Janosek Declaration, NSA conducted a reasonable search for documents that constituted "executing protocols distributed to the" NSA.  Plaintiff has acknowledged that it does not dispute the reasonableness of NSA's

---

[9] Plaintiff claims that NSA failed to properly assert Exemption 3 with regard to the cited paragraph of NSPD 54.  Plaintiff Opp. at 22 n.6.  The basis for this claim is totally unclear, as NSA's motion plainly and repeatedly asserts Exemption 3 with regard to the cited provision of NSPD 54.  *See* NSA Opening Br. at 2, 21 n.4.  Plaintiff additionally claims that NSA failed to assert this exemption at the administrative stage of this dispute.  Plaintiff Opp. at 22 n.6.  But the exemptions asserted at the administrative stage do not limit the set of exemptions an agency can claim in the course of a FOIA lawsuit.  *See, e.g.*, *Gula v. Meese*, 699 F. Supp. 956, 959 n.2 (D.D.C. 1988) ("The plaintiff argues that the FBI is estopped from withholding any information under Exemption 7(D) since it failed to invoke this exemption at the administrative level. . . . [T]he defendant in a FOIA case may assert new exemptions at the federal district court level stage not previously asserted at the administrative level, even if the circumstances have not changed in the interim.").

search for documents.  Plaintiff Opp. at 27.  Instead, Plaintiff claims that Item Two of the FOIA Request should be deemed to also have requested "any executing protocols, either originating from or distributed to the NSA."  *Id.*

Plaintiff's argument is self-defeating.  As noted above, Plaintiff requested "executing protocols distributed to" NSA.  *Id.* at 4.  Plaintiff's own submission acknowledges that documents "originating from . . . the NSA" would not be captured in the phrase requesting documents "distributed to the NSA."  *Id.* at 27.  Instead, Plaintiff attempts to rewrite its own FOIA request, pretending that Plaintiff had requested "any executing protocols" instead of the more specific request for "executing protocols distributed to [NSA]."

NSA obviously did not compel Plaintiff to request a particular subset of executing protocols.  But having requested "executing protocols distributed to" NSA, Plaintiff cannot now pretend that it requested "all executing protocols, whether originating from or distributed to the NSA."  And because Plaintiff concededly does not challenge the sufficiency of NSA's search for documents, this Court should grant summary judgment with regard to this aspect of Plaintiff's FOIA request.

Plaintiff also suggests that NSA offered an inconsistent answer to Item Two of Plaintiff's FOIA request, by refusing to acknowledge that NSPD 54 itself would be responsive both Item One and Item Two of Plaintiff's FOIA request.  Whatever explanations were provided at the administrative stage, NSA has made abundantly clear that NSPD 54 would constitute a responsive document to Item Two of Plaintiff's FOIA request (in that NSPD 54 embodies the full text of the Comprehensive National

Cybersecurity Initiative).[10]  *See* NSA Opening Br. at 23 ("The full text of the CNCI is embodied in NSPD 54. . . . Accordingly, the full text of the CNCI was properly withheld along with the remainder of NSPD 54.").  And, as described in both NSA's motion and this brief, NSPD 54 is entirely exempt from disclosure under FOIA Exemption 5.  So even if NSA's administrative response did not definitively communicate that NSPD 54 – over which NSA acknowledged possession – was responsive both to Items One and Two of Plaintiff's FOIA request,[11] NSA has now unequivocally informed Plaintiff that (i) NSPD 54 is responsive to Item Two of the FOIA request, (ii) NSA has possession of a copy of NSPD 54, and (iii) NSA is lawfully entitled to withhold that document.

Accordingly, this Court should grant summary judgment with respect to Item Two of Plaintiff's FOIA Request.

---

[10] Explanations offered at the administrative stage do not restrict the exemptions that may be invoked when a FOIA request results in litigation.  *Kay v. FCC*, 867 F. Supp. 11, 21-22 (D.D.C. 1994); *Rojem v. U.S. Dep't of Justice*, 775 F. Supp. 6, 9 (D.D.C. 1991); *Gula v. Meese*, 699 F. Supp. 956, 959 (D.D.C. 1988).

[11] Plaintiff's characterization of NSA's administrative response, although irrelevant, is also misplaced.  Plaintiff's own submissions have treated the Comprehensive National Cybersecurity Initiative ("CNCI") as equivalent to NSPD 54.  *See* Janosek Decl., Tab A (Plaintiff's FOIA Request) (interchangeably referring to NSPD 54 and CNCI and acknowledging that "[u]nder [NSPD 54], the Comprehensive National Cybersecurity Initiative (CNCI) was formed").  And NSA acknowledged possession of NSPD 54 – thereby conclusively informing Plaintiff that NSA possessed a document responsive to Item Two of the FOIA request.

## CONCLUSION

For the reasons discussed herein, this Court should grant summary judgment to the NSA, deny Plaintiff's cross-motion for summary judgment, and dismiss Plaintiff's action in its entirety.

DATED: December 8, 2011

Respectfully submitted,

TONY WEST
Assistant Attorney General

RONALD C. MACHEN
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director

  _/s/Joshua Wilkenfeld_
JOSHUA WILKENFELD
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 305-7920
Fax: (202) 616-8470
Email: joshua.i.wilkenfeld@usdoj.gov

_Counsel for Defendants_