IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )   No. 1:10-cv-00196-BAH ) |
| NATIONAL SECURITY AGENCY | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S REPLY IN SUPPORT OF EPIC's
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff the Electronic Privacy Information Center ("EPIC") submits the following reply in support of EPIC's cross-motion for summary judgment against Defendant the U.S. National Security Agency ("NSA"). EPIC asks the Court to order disclosure of agency records responsive to EPIC's June 25, 2009 Freedom of Information Act ("FOIA") request. EPIC's FOIA request seeks agency records, including National Security Presidential Directive 54 ("NSPD 54"), concerning the NSA's exercise of cybersecurity authority.

The agency asserts that NSPD 54 and related records are exempt from disclosure under a FOIA exemption that typically allows agencies to withhold inter-agency or intra-agency memorandums or letters that would not be available to a party in litigation with the agency. 5 U.S.C. § 552(b)(5). The NSA's position amounts to a claim that the President may enact secret laws, direct federal agencies to implement those laws, and shield the content of those laws from public scrutiny. The presidential communications privilege does not support such a sweeping result, nor do the other arguments advanced by the agency.

**ARGUMENT**

The NSA's Opposition and Reply (Dkt. No. 15) ("NSA Reply") fails to rebut EPIC's central claims: 1) that the presidential communications privilege has not been personally invoked in this case, thus rendering FOIA Exemption 5 inapplicable; and 2) that the privilege cannot be employed to cloak presidential directives that detail agency's legal authority. Further, the NSA disregards the plain language of Category 2 of EPIC's FOIA request in an attempt to keep secret responsive agency records.

### I. NSPD 54 Cannot Be Withheld Under FOIA Exemption 5

The NSA alleges that NSPD 54 is exempt from disclosure pursuant to the presidential communications privilege. The privilege must be personally invoked. Further, the privilege protects the President's decisionmaking process, not the Executive's promulgation of directives that create agency policy. *See, e.g., In re Sealed* Case, 121 F.3d 729, 752 (D.C. Cir. 1997) ("the presidential communications privilege should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected). In this case, the privilege was not personally invoked, nor was it asserted with respect to the decisionmaking process of the President. Even if the Court holds that the privilege has been properly invoked, the public interest in disclosure of NSPD 54, which sets out broad legal authority for surveillance of electronic communications within the United States, outweighs the government's interest in secrecy.

#### a. The Presidential Communications Privilege Is Narrowly Construed

The presidential communications privilege was established in the context of civil discovery. *See, e.g U.S. v. Nixon*, 418 U.S. 683 (1974). In some circumstances, the privilege is also asserted to exempt documents from disclosure under the FOIA. *See*, e.g, *NLRB v. Sears,*

2

*Roebuck & Co.,* 421 U.S. 132, 149 (1975); *Citizens for Responsibility and Ethics in Washington v. Dept. of Homeland Security*, 2008 WL 2872183 at *2 (D.D.C. July 22, 2008) ("Documents that are subject to . . . the presidential communications privilege can be withheld pursuant to Exemption 5."). Although the NSA's Reply makes much of the distinction between the use of the privilege in the civil discovery context and in FOIA cases, courts hold that when a document "would normally be subject to disclosure in the civil discovery context, it must also be disclosed under FOIA." *Citizens for Responsibility and Ethics v. National Archives and Records Admin.*, 583 F. Supp. 2d 146, 156 (D.D.C. 2008).

      b. *The Presidential Communications Privilege Must be Personally Invoked in FOIA Matters*

The NSA argues, "[a]lthough personal invocation of a privilege may be required in civil discovery, this Court has made clear that invocation by the President is not required in the FOIA context." NSA Reply at 4. The NSA cites cases in support of the proposition that "the President does not need to personally invoke the presidential communications privilege to withhold documents pursuant to FOIA Exemption 5." *Citizens for Responsibility and Ethics in Washington v. Dept. of Homeland Security*, 514 F. Supp. 2d 36, 48 n.10 (D.D.C. 2007); *see also Lardner v. US Dept. of Justice*, 2005 WL 758267, at *7 (D.D.C. 2005); *Loving v. US Dept. of Defense*, 496 F. Supp. 2d 101, 108 (D.D.C. 2007).

However, these cases were superseded in 2008, when the D.C. Circuit relied on the reasoning of a civil discovery case to address, for the first time, the proper standard for presidential privilege claims in FOIA cases. *See Citizens for Responsibility and Ethics in Washington v. Dept. of Homeland Security*, 532 F.3d 860 (D.C. Cir. 2008) ("*CREW*"). In *CREW*, the D.C. Circuit observed, "the agency would need to consult with the White House before claiming Exemption 5 on executive privilege grounds." *Id*. at 866 (dismissing appeal for lack of

jurisdiction); *See also National Institute of Military Justice v. US Dept of Defense*, 512 F.3d 677, 690 (D.C. Cir. 2008) ("the former President…retains aspects of his former role-most importantly, for current purposes, the authority to assert the executive privilege regarding Presidential communications…").

The NSA relies on *Lardner* to argue that the "procedure employed" to invoke Exemption 5 is not relevant to the question of whether the document qualifies for the privilege. NSA Reply at 4; *Lardner*, 2005 WL 758267. This argument fails for three reasons.

First, *CREW* supersedes *Lardner*. Second, *Lardner,* a 2005 district court case*,* does not bind this court. "District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish the law of the district." *In re Executive Office of the President*, 215 F.3d 20, 24 (D.C. Cir. 2000) (citations and internal quotation marks omitted).

Third, *Lardner* was wrongly decided. *Lardner* cites *Fed. Trade Comm'n v. Grolier* to bolster *Lardner*'s holding that the presidential communications privilege need not be personally invoked. *Lardner*, 2005 WL 758267 at *6 (citing *Fed. Trade Comm'n v. Grolier*, 462 U.S. 19 (1983)). But the Court did not authorize agency invocation of the presidential communications privilege in *Grolier*. *Id*. In fact, *Grolier* did not involve the presidential communications privilege at all. Instead, *Grolier* resolved a dispute concerning the "attorney work product privilege" – a privilege that the NSA concedes is not applicable in the present case. NSA Motion for Summary Judgment (Dkt. No. 12) at 7-8 ("NSA Motion"). In *Grolier*, the parties and the Court agreed that the documents at issue qualified as "work product," and therefore fell "within the ambit" of the privilege. *Id*. at 23 ("both the District Court and the Court of Appeals found that the documents at issue were properly classified as "work product" materials, and there is no serious argument about the correctness of this classification."); *see also Dept. of Interior v.*

4

*Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001) ("to qualify [for an Exemption 5 privilege], a document must . . . fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."). The only argument was whether the documents were of a type that "would be routinely or normally disclosed upon a showing of relevance." *Grolier*, 462 U.S. at 26 (citations and internal quotations omitted). In exempting the documents from disclosure, the Court relied on the fact that, under the established case law in every court of appeals and an "overwhelming majority of the federal district courts reporting decisions," similar documents were not discoverable, and therefore it could not be said that the materials were "routinely available in subsequent litigation." *Id*. at 26-27.

By contrast, in this case, NSPD 54 has not qualified for protection under the presidential communications privilege. As previously discussed, the President must personally assert the privilege before it attaches to a document. EPIC's Motion for Summary Judgment (Dkt. Nos. 13-14) ("EPIC's Motion"). Unless the President personally invokes the privilege, NSPD 54 is an agency record that would "routinely or normally [be] disclosed upon a showing of relevance." *See Cheney v. US District Court for the District of Columbia*, 542 U.S. 367, 389 (2003) (requiring Vice President Cheney to personally invoke the presidential communications privilege in response to a civil discovery order). Because neither the current nor the former President, nor an agent designated by either, has asserted that NSPD 54 is a "confidential presidential communication," the Directive does not qualify for withholding under Exemption 5.

EPIC's Motion does not, as the NSA alleges, "claim that the presidential communications privilege only applies where disclosure would impose a significant burden on the President." NSA Reply at 5 n. 1. Instead, EPIC's Motion simply addresses the fact that allegations of

5

excessive burden have been previously cited by courts discussing the personal invocation requirement. EPIC's Motion at 11-12; *E.g. Lardner*, 2005 WL 758267 at *9.  However, *CREW* held that the burden of the personal invocation requirement can be smaller in the FOIA context than in civil discovery. "[t]he burden on the White House or Office of the Vice President to decide whether to claim Exemption 5 over any responsive records should prove minimal." *CREW*, 532 F.3d at 867.

    *c. NSPD 54 is Not a "Confidential Presidential Communication"*

Even if the Court holds that the presidential communications privilege need not be personally invoked, NSPD 54 cannot be considered a "confidential presidential communication" within the accepted meaning of the presidential communications privilege. No court has held that all sensitive documents transmitted or received by the President are presumptively protected by the presidential communications privilege. NSA Reply at 9; *See, e.g., In re Sealed* Case, 121 F.3d at 752; *Judicial Watch, Inc. v. National Energy Policy Development Group*, 219 F. Supp. 2d 20, 50 (D.D.C. 2002) ("this Court must inquire into whether the law's requirements would infringe on the President's ability to perform constitutional functions."). NSPD 54 does not fall "within the ambit" of the presidential communications privilege because NSPD 54 is neither "confidential" nor a "communication."  *See Klamath Water Users Protective Assn.*, 532 U.S. at 8; *see also Citizens for Responsibility and Ethics in Washington v. Dept. of Homeland Security*, 514 F. Supp. 2d at 49-50 ("The core of the presidential communications privilege is the protection of the President's need for confidentiality in the communications of his office.").

NSPD 54 is not a document that was transmitted solely between the President and his "immediate White House advisors and their staff." *EPIC v. Dept. of Justice*, 584 F. Supp. 2d 65,

80 (D.D.C. 2008). The NSA claims that NSPD 54 is of "inherent sensitivity."[1] NSA Reply at 9. However, the NSA concedes that NSPD 54 was shared with "senior policy advisors, cabinet officials, and agency heads," as well as countless other lower-ranking officials within several administrative agencies on a "need to know basis." Ronan Decl. at ¶¶ 5, 7. The fact that NSPD 54 was and continues to be disclosed to individuals outside the White House demonstrates that it is not the type of confidential document that the presidential communications privilege anticipates. NSA Motion at 10.

The NSA argues that "the President's entitlement to confidentiality [does not] dissipate[] if he chooses to communicate with high-ranking executive branch officials outside of his immediate circle of White House advisors. NSA Reply at 9 (emphasis added). However, the NSA concedes that the President does not, as a practical matter, choose to whom NSPD 54 is distributed. *See* Ronan Decl. at ¶ 7 (conceding that receiving agencies were allowed to share the document on a "need to know basis" without approval of the White House.). When a document is shared between low-ranking officials and their supervisors, the document ceases to be "communications to and from the President of the United States." NSA Reply at 10.

The NSA argues that the cases cited by EPIC are not binding as to a document "directly issued by the President." NSA Reply at 9; EPIC's Motion at 14-16. But the guidance in authorities cited by EPIC are relevant to this Court's analysis. The D.C. Circuit has addressed the circumstances under which a document implicates the presidential decision-making process. This Circuit consistently restricts application of the privilege to the President's inner circle. *See In re*

---

[1] EPIC's Motion observed that the NSA did not "establish that the term 'confidential' was used either by President Bush within the Directive or in the text of the Memo." EPIC's Motion at 13. The NSA asserted that there was "no basis for requiring the use of talismanic words as a prerequisite for application of the presidential communications privilege." NSA Reply at 6, n. 2. However, the NSA itself gives weight to this "talismanic word," using it seventeen times with regard to NSPD 54 in the agency's Reply and Opposition. *See* NSA Reply at 2, 5, 6, 8-12.

*Sealed Case*, 121 F.3d at 752 ("the privilege should not extend to staff outside of the White House in executive branch agencies"); *Judicial Watch, Inc. v. Dept. of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) ("the privilege extends to the President's immediate advisers because of the need to protect candid, objective, and even blunt or harsh opinions") (internal citations omitted); *Judicial Watch, Inc. v. National Energy Policy Development Group*, 219 F. Supp. 2d at 50-51 ("the Supreme Court has repeatedly recognized that the importance to the Presidency of receiving candid, honest, and when necessary, unpopular, advice from high Government officials and those who advice and assist them in the performance of their manifold duties is paramount.") (citing *United States v. Nixon*, 418 U.S. at 705).

The NSA does not argue that the text of NSPD 54 identifies the Directive as "confidential," or even as "sensitive." Instead, the agency cites to a separate memorandum ("the Memo") that characterized the contents of NSPD 54 as having "close-hold nature." NSA Motion at 10; Ronan Decl. at ¶ 7. The Memo was written by the Homeland Security Committee's Executive Secretary. *Id*. However, well-established case law requires the President, not an agency, to designate privileged documents. *See Judicial Watch, Inc. v. Dept. of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) ("The President can invoke the privilege when asked to produce documents or other materials that reflect presidential decisionmaking and that the President believes should remain confidential.") (citing *In re Sealed Case*, 121 F.3d at 744).

The United States has a long-standing prohibition against the implementation of "secret law." This prohibition is not merely a "limitation on the deliberative process privilege." *See* NSA Reply at 11. Rather, the prohibition against the promulgation of secret law is far broader. The primary purpose of the Freedom of Information Act is to prevent the proliferation of "secret law." *NLRB*, 421 U.S. at 137-138 ("the memoranda sought are expression of legal and policy

decisions already adopted by the agency and constitute 'final opinions' and 'instructions to staff that affect a member of the public,' both categories being expressly disclosable under § 552(a)(2) of the Act, pursuant to its purposes to prevent the creation of 'secret law.'"); *see also* Easterbrook, Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act, 9 J. Legal Studies 775, 777 (1980) ("The act's indexing and reading-room rules indicate that the primary objective is the elimination of 'secret law.'"). Further, President Obama has stated a policy against the proliferation of secret law: "in our democracy, the Freedom of Information Act (FOIA), which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open Government." *Memorandum for the Heads of Executive Departments and Agencies: Freedom of Information Act*, THE WHITE HOUSE, http://www.whitehouse.gov/the_press_office/FreedomofInformationAct (Jan. 21, 2009).

The NSA argues that NSPD 54 qualifies for the presidential communications privilege because, unlike the deliberative process privilege, the presidential communications privilege can apply to some "post-decisional communications." *See* NSA Reply at 10-12. The NSA asserts, "presidential decisions are likely to have significant impact on Executive Branch activities." NSA Reply at 11. However, none of the NSA's authorities support the proposition that the President may use the presidential communications privilege to shield secret law from public view. The two cases cited in the NSA Reply do not involve any documents that create legal authority for agencies or set broad policy for the executive branch. *See* NSA Reply at 11. Instead, these cases involve communications and deliberations related to a specific event, investigation, or individual. *See Judicial Watch, Inc. v. Dept. of Justice*, 365 F.3d at 1113-14 (involving internal pardon documents solicited and received by the President or his office); *In re*

*Sealed Case*, 121 F.3d at 744-45 (involving documents pertaining to the White House Counsel's investigation of the former Secretary of Agriculture).

NSPD 54 is a policy-setting document that establishes substantive legal authority that impacts a large group of individuals, including Internet users across the United States. NSA Reply at 12; *see also* EPIC Motion at 17. By labeling NSPD 54 a simple "communication," the NSA mischaracterizes the significance of the document and would encourage the expansion of secret law. NSPD 54 contains "directives" and "orders" that have a substantial impact on the public. *See* NSA Motion at 11; Ronan Decl. at ¶ 13. As such, NSPD 54 is not a communication, even a post-decisional communication, within the meaning of the presidential communication privilege.

d.  *There is a Compelling Public Need for NSPD 54 to be Released*

Even if this Court holds that the presidential communications privilege has attached to NSPD 54, the Court should order the NSA to disclose NSPD 54. The need for public release of NSPD 54 is more than sufficient to overcome the agency's privilege claim. The NSA argues, "EPIC cannot resist the instant motion for summary judgment by citing its putative need." NSA Reply at 7. This is because, as the NSA asserts, "a plaintiff's need cannot disturb application of Exemption 5 in the FOIA context." *Id*. However, EPIC does not argue that the "plaintiff's need" alone trumps Exemption 5. Instead, EPIC contends that the NSA's Exemption 5 assertion is overcome by the public's need for disclosure of NSPD 54.

NSPD 54 is an unclassified document that sets policy for executive agency activities concerning cybersecurity. The NSA admits that the release of its contents would not adversely affect the national security of the United States. *See* Ronan Decl. at ¶ 13; EPIC's Motion at 21.

Because of the sweeping authorities set out in this particular Directive and its creation of "secret law," the contents of NSPD 54 are "of paramount importance." EPIC's Motion at 21.

The content and nature of NSPD 54, not just EPIC's need for the document, favors public disclosure. *See* EPIC's Motion at 18-21. As EPIC explains, the "contents of NSPD 54 demonstrate the necessity of disclosure, the public benefit to be gained from disclosure, and the harm that will be inflicted on EPIC and the public if the NSA is permitted to keep secret the directive." EPIC's Motion at 19. The NSA's withholding of NSPD 54 prior to and over the course of this litigation has already had detrimental effects on the public, all of whom continue to be kept in the dark regarding key policy standards and guidelines, any of which impact the public in its everyday operation.[2]

The NSA Reply relies primarily on *Loving v. Department of Defense*, where the D.C. Circuit Court held, "the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." 550 F.3d 32, 40 (D.C. Cir. 2008) (citing *In re Sealed Case*, 121 F.3d at 737 n. 5). But the present case is distinguishable from *Loving*. The document at issue in *Loving*, the "Judge Advocate General's recommendation on Loving's capital sentence," could only have an impact on the appellee and those close to him. *Loving*, 550 F.3d at 40. However, the NSA's withholding of NSPD 54 has effected every Internet user in the United States.

It is essential that this Court order that the NSA disclose all segregable portions of NSPD 54. The NSA's arguments that NSPD 54 be withheld pursuant to the presidential

---

[2] By withholding an important policy document that will impact future laws, many of which are currently pending in Congress, the NSA effectively denies the citizens the "right[] of individuals to engage in political speech." *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 411 (2000) (further noting, "a self-governing people depends upon the free exchange of political information.").

communications privilege would expand the scope of the privilege beyond what was anticipated by the Constitution or permitted by prior courts.

**II. The NSA Attempts to Revise the Scope of Category 2 of EPIC's FOIA Request**

The NSA concedes that Category 2 of EPIC's FOIA Request expressly requested "the full text, including previously unreported sections, of the Comprehensive National Cybersecurity Initiative, as well as any executing protocols distributed to the agencies in charge of its implementation." NSA Reply at 15. As stated in EPIC's FOIA Request and EPIC's FOIA Appeal "the NSA, along with FBI and CIA, are agencies charged with the responsibility of implementing the CNCI." EPIC's FOIA Request at 2. The NSA does not rebut this characterization. The NSA concedes that NSPD 54, the document that contains the full text of the CNCI, was distributed to numerous agencies. *See* Ronan Decl. at ¶ 7.

Despite this, the NSA improperly interprets the language in EPIC's FOIA Request that describes "the agencies in charge of [the CNCI's] implementation," as referring only to the NSA. NSA Reply at 15-17 (stating on at least 5 separate occasions that EPIC requested "executing protocols distributed to NSA" (internal quotations omitted)). The NSA's interpretation is impermissibly narrow. EPIC's FOIA request unequivocally seeks "the full text, including previously unreported sections, of the Comprehensive National Cybersecurity Initiative, as well as any executing protocols" distributed to any federal agency charged with implementing the cybersecurity scheme.

The NSA may be in possession of the CNCI or related records that were issued to the FBI, the CIA, or other federal agencies. Such records are responsive to EPIC's FOIA request and must be disclosed. *See Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 146 (1989) (defining "agency records" as documents "created or obtained [by the agency]" and over which the

Agency maintains control.) The NSA may not withhold responsive agency records in the NSA's possession simply because the documents originated from, or were directed to, another agency.

The Court should require that the NSA disclose all records that are responsive to the plain language of Category 2 of EPIC's FOIA Request.

## **CONCLUSION**

For the foregoing reasons and the reasons stated in EPIC's cross-motion for summary judgment, the Court should grant summary judgment in EPIC's favor.

Respectfully submitted,
       */s/ John Verdi*
MARC ROTENBERG
JOHN VERDI
AMIE STEPANOVICH[*]
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, D.C. 20009
(202) 483-1140
*Counsel for Plaintiff*

---

[*] Amie Stepanovich is a member of the bar of the State of New York.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 22nd day of December 2011, I served the foregoing PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, including all exhibits and attachments, by electronic case filing upon:

JOSHUA WILKENFELD  
Trial Attorney  
United States Department of Justice  
Civil Division, Federal Programs Branch  
20 Massachusetts Ave. NW  
Washington, DC 20530  
Tel.    (202) 305-7920  
Fax    (202) 305-8470  
Joshua.I.Wilkenfeld@usdoj.gov  

                                                      */s/ John Verdi*  
                                                      John Verdi  
                                                      *Counsel for Plaintiff*