# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 1:10-cv-00196 (BAH) |
| UNITED STATES NATIONAL SECURITY AGENCY | ) ) ) ) | |
| Defendant. | ) ) | |

_____)

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 2

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT ...................................................................................................................... 7

I.      THE COURT SHOULD REJECT EPIC'S MOTION IN ITS ENTIRETY ..................... 7

        A.      The Inclusion of an Especially Egregious Position Merits Denial
                of EPIC's Motion for Costs and Fees in Full ............................................... 7

                1.      *EPIC's Position that it Should Recover for Work Conducted
                        Before Entry of Judgment is Frivolous* ........................................... 7

                2.      *For Prosecuting this Frivolous Position, EPIC Should
                        Recover Nothing* ............................................................................ 9

        B.      EPIC is Not Entitled to Fees. ..................................................................... 10

II.     EPIC HAS MADE NUMEROUS UNREASONABLE CLAIMS FOR FEES ............... 14

        A.      EPIC has Failed to Provide Contemporaneous Billing Records ................. 14

        B.      For Four Attorneys, EPIC Has Not Submitted Evidence Sufficient
                to Support its Claimed Reimbursement Rates .......................................... 18

        C.      "Conferences" and Overstaffing ............................................................... 22

        D.      Fees on Fees Should be Substantially Discounted on Account
                of EPIC's Insufficient Billing Records ....................................................... 22

III.    NSA'S PROPOSED CALCULATIONS ................................................................... 25

        A.      District Court ............................................................................................. 25

        B.      Court of Appeals ....................................................................................... 25

        C.      Fees on Fees ............................................................................................. 27

        D.      Costs .......................................................................................................... 28

CONCLUSION ................................................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*Alliance for Responsible CFC Policy v. Costle,*
    631 F. Supp. 1469 (D.D.C. 1986) ............................................................ 12

*Brayton v. Office of the U.S. Trade Representative,*
    641 F.3d 521 (D.C. Cir. 2011) ................................................... 6, 11, 12

*Brown v. Stackler,*
    612 F.2d 1057 (7th Cir. 1980) ................................................................ 10

*Church of Scientology of Cal. v. Harris,*
    653 F.2d 584 (D.C. Cir. 1981) .............................................................. 5, 6

*Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice,*
    825 F. Supp. 2d 226 (D.D.C. 2011) ................................... 15, 16, 17, 24

*Cobell v. Norton,*
    407 F. Supp. 2d 140 (D.D.C. 2005) ........................................................ 10

*Cotton v. Heyman,*
    63 F.3d 1115 (D.C. Cir. 1995) ................................................................ 12

*Davy v. CIA,*
    550 F.3d 1155 (D.C. Cir. 2008) .............................................. 1, 11, 12, 13

*Dorsen v. U.S. SEC,*
    15 F. Supp. 3d 112 (D.D.C. 2014) .................................................. passim

*Elec. Privacy Info. Ctr. v. U.S. DHS,*
    811 F. Supp. 2d 216 (D.D.C. 2011) .................................................. 13, 19

*Elec. Privacy Info. Ctr. v. U.S. DHS,*
    982 F. Supp. 2d 56 (D.D.C. 2013) ........................................ 9, 18, 19, 22

*Elec. Privacy Info. Ctr. v. U.S. DHS,*
    999 F. Supp. 2d 61 (D.D.C. 2013) .................................................. passim

*Elec. Privacy Info. Ctr. v. FBI,*
    --- F. Supp. 3d ---, 2014 WL 5713859 (D.D.C. Nov. 5, 2014) ......................... passim

*Envtl. Defense Fund, Inc. v. Reilly,*
    1 F.3d 1254 (D.C. Cir. 1993) .............................................................. 1, 9

ii

*Hensley v. Eckerhart*,
   461 U.S. 424 (1982)..................................................................................... 6

*LaPrade v. Kidder Peabody & Co., Inc.*,
   146 F.3d 899 (D.C. Cir. 1998)..................................................................... 9

*McClam v. Dist. of Columbia*,
   808 F. Supp. 2d 184 (D.D.C. 2011) ............................................................ 6

*McKinley v. FHFA*,
   739 F.3d 707 (D.C. Cir. 2014)......................................................... 5, 10, 18

*\*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*,
   675 F.2d 1319 (D.C. Cir. 1982) .......................................................... passim

*Nw. Coal. For Alternatives to Pesticides v. Browner*,
   965 F. Supp. 59 (D.D.C. 1997) ................................................................. 13

*Summers v. U.S. Dep't of Justice*,
   569 F.3d 500 (D.C. Cir. 2009) ................................................................. 10

*Tax Analysts v. U.S. Dep't of Justice*,
   965 F.2d 1092 (D.C .Cir. 1992) .......................................................... 10, 13

*Tunison v. Continental Airlines Corp.*,
   162 F.3d 1187 (D.C. Cir. 1998) ................................................................. 8

*Weisberg v. Webster*,
   749 F.2d 864 (D.C. Cir. 1984) ................................................................. 14

## STATUTES

5 U.S.C. § 552 ................................................................................... 5, 6, 10

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 59 ....................................................................................... 8
Fed. R. Civ. P. 60 ....................................................................................... 8
Fed. R. Civ. P. 68 .................................................................................. 8, 24

## MISCELLANEOUS

Joseph Marks & David Perera, *First look: Cost of Cybercrime High, Rising – House*
   *Appropriators to Take Up DHS Cyber Spending – Rancor Follows Vodafone Release*,
   Politico – Morning Cybersecurity (June 9, 2014)..................................... 13

## INTRODUCTION

On February 11, 2014, Judgment was entered in this case for Plaintiff Electronic Privacy Information Center ("EPIC") "in full resolution of all claims" for "all costs accrued, including all attorneys' fees and all fees on fees."  Judgment on Offer & Acceptance (ECF No. 37) at 1. Notwithstanding that, EPIC now asks this Court to award it $59,298.29 in costs and fees.

This Court is presented with several reasons why it should deny EPIC's motion in its entirety.  First and foremost, EPIC is seeking over $20,000 in fees for claims it already released, in contravention of the Judgment already entered.  And it does so without any explanation concerning why it believes such payment would be appropriate.  EPIC's position is facially unreasonable, and the mere inclusion of that position merits denial of EPIC's motion in full, lest "the only unfavorable consequence of such misconduct . . . be reduction of [its] fee to what [it] should have asked for in the first place."  *Envtl. Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (quotation marks and citation omitted).  In addition, this Court granted NSA summary judgment "as it pertains to NSPD 54," Mem. Op. ("Summ. J. Mem. Op.") (ECF No. 27) at 15—the central document at issue in this FOIA case—which is "'dispositive'" on the question of EPIC's entitlement to costs and fees, *Dorsen v. U.S. SEC*, 15 F. Supp. 3d 112, 121 (D.D.C. 2014) (quoting *Davy v. CIA*, 550 F.3d 1155, 1162 (D.C. Cir. 2008)).  The Court can and should resolve this motion on one of these grounds, without having to look at a single billing record EPIC has submitted.

If the Court determines that it will consider EPIC's records, it should quickly conclude that EPIC deserves far less than the nearly $60,000 it seeks to collect.  EPIC has not submitted the type of "'contemporaneous, complete and standardized time records'" that are required in this Circuit.  *Elec. Privacy Info. Ctr. v. U.S. DHS* ("*EPIC*"), 999 F. Supp. 2d 61, 72 (D.D.C.

2013) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  Indeed, crucial details from the draft billing records EPIC shared with NSA—details adverse to EPIC's position—have been omitted from the reconstituted billing records EPIC has provided to this Court.  Such evidence does not enable NSA, or this Court, to thoroughly scrutinize EPIC's claims.  EPIC's evidentiary problems run so deep that it cannot even establish that most of its attorneys were licensed to practice law at the time they worked on this case.

For these reasons, and the reasons that follow, NSA respectfully requests that the Court deny EPIC's motion for costs and fees.

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case concerns a FOIA request EPIC sent to NSA on June 25, 2009.  NSA released some material in response to the request, and withheld other responsive material, most notably National Security Presidential Directive 54 ("NSPD 54").

On February 4, 2010, EPIC filed the present suit against NSA and the National Security Council ("NSC") seeking disclosure of the withheld material, among other things.  *See* Compl. (ECF No. 1).  On March 25, 2010, defendants filed a partial motion to dismiss.  *See* Defs.' Partial Mot. to Dismiss (ECF No. 4).  EPIC filed a brief in opposition, *see* Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss (ECF No. 7), but the Court granted the motion in full, dismissing two of the Complaint's four counts, as well as NSC, *see* Mem. Op. (ECF No. 9); Order (ECF No. 10).

On October 11, 2011, NSA moved for summary judgment.  *See* Def.'s Mot. for Summ. J. (ECF No. 12).  EPIC opposed NSA's motion and cross-moved for summary judgment, ultimately filing two briefs on the subject.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J., Cross-Mot. for Summ. J. (ECF No. 13); Pl.'s Reply in Supp. of EPIC's Cross-Mot. for Summ. J. (ECF

No. 17).  On October 21, 2013, the Court granted-in-part and denied-in-part the cross-motions

for summary judgment.  *E.g.*, Order (ECF No. 28).  As relevant here, the Court granted summary

judgment to NSA "as it pertains to NSPD 54."  Summ. J. Mem. Op. at 15.  On November 15,

2013, the Court directed the Clerk to close the case, but "retain[ed] jurisdiction of this matter for

the purposes of determining appropriate allocation of fees and costs, if judicial intervention is

warranted."  Minute Order (Nov. 15, 2013).  On December 17, 2013, EPIC noticed an appeal.

*See* Notice of Appeal (ECF No. 32).

     The parties proceeded to engage in settlement negotiations regarding fees and costs.  *See,*

*e.g.*, Joint Status Report (ECF No. 34) ¶¶ 2-4.  On January 27, 2014, NSA served on EPIC an

Offer of Judgment pursuant to Federal Rule of Civil Procedure 68.  *See* Def.'s Notice of

Acceptance of Offer of Judgment ("Def.'s Notice of Acceptance") (ECF No. 36), Ex. A.  The

Offer of Judgment read, in pertinent part:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendant National
> Security Agency hereby offers to allow judgment to be taken against it, in the
> amount of $3,500.00, in full resolution of all claims of Plaintiff Electronic Privacy
> Information Center for all costs, including attorney's fees, incurred in this action.
> This offered amount includes all costs accrued, including all attorney's fees and
> all fees on fees.

*Id.*, Ex. A.  On February 9, 2014, EPIC accepted the Offer of Judgment.  *Id.* at 1.  The following

day, notice of NSA's Offer of Judgment and EPIC's acceptance was filed on this docket.  *Id.*

     The Offer of Judgment and notice of acceptance were "approved by the Court," and on

February 11, 2014, the Clerk of Court entered judgment accordingly.  Judgment on Offer &

Acceptance ("Judgment") (ECF No. 37) at 1.  The Judgment read, in pertinent part:

> JUDGMENT is entered for ELECTRONIC PRIVACY INFORMATION
> CENTER against UNITED STATES NATIONAL SECURITY AGENCY in this
> action, in the amount of $3,500.00 (Three Thousand Five Hundred Dollars), in
> full resolution of all claims of Plaintiff Electronic Privacy Information Center for

all costs, including attorney's fees, incurred in this action.  This offered amount
includes all costs accrued, including all attorney's fees and all fees on fees.

*Id.*  NSA paid EPIC the adjudged amount soon thereafter.

On March 31, 2014, EPIC filed its opening brief in the D.C. Circuit.  On June 5, 2014,
NSA released to EPIC an unclassified version of NSPD 54.  Joint Mot. to Dismiss Pl.'s Appeal
as Moot, Vacate the District Court Decision in Part, and Remand to Address Any Claim for Fees
(attached hereto as Ex. A) at 1.  On June 9, 2014, the parties reported to the D.C. Circuit their
"agree[ment] that the issue raised in plaintiff's appeal [wa]s moot now that the agency has
released the record at issue."  *Id.*  The parties "therefore move[d] to dismiss the matter" as moot,
jointly requesting that the Court of Appeals "vacate the portion of the district court decision
addressing plaintiff's request for NSPD 54," and that "the case be remanded to the district
court," where "plaintiff intend[ed] to argue that it is entitled to an award of attorney's fees."  *Id.*
at 2; *see also id.* at 1, 3 (similar).  The parties further agreed that "[n]othing in the language of
th[e] joint motion should be understood to reflect on whether or not plaintiff is eligible for or
entitled to attorney's fees."  *Id.* at 3.

On July 31, 2014, the D.C. Circuit granted the parties' motion, and its Order was filed on
this docket on August 12, 2014.  *See* Order ("Remand Order") (ECF No. 38) at 1.  The Court
stated that, because "the agency has now released the document appellant sought, the appeal no
longer presents a live controversy."  *Id.* (citation omitted).  The Court "therefore vacate[d] that
part of the district court's October 21, 2013 order holding that a Presidential Directive in the
possession of a federal agency is not an agency record subject to the Freedom of Information
Act."  *Id.* (citation omitted).  It remanded the case to this Court "for further proceedings."  *Id.*
(citation omitted).

On remand, the parties proceeded to conduct negotiations concerning costs and fees.  *See, e.g.*, Joint Status Report (ECF No. 42) ¶ 2.  Key milestones in that negotiation include:

-   On September 11, 2014, EPIC submitted to NSA "what it considers to be a detailed bill of fees and costs."  Joint Status Report (ECF No. 43) ¶ 2.

-   Early in the afternoon of October 1, 2014, NSA served on EPIC an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68.

-   At 8:57pm on October 1, 2014, EPIC extended a settlement offer to NSA, which it proceeded to withdraw, over the objection of NSA counsel, when NSA counsel filed the agreed upon Joint Status Report shortly after 5pm on October 2, 2014.

-   At approximately 10am the morning of October 16, 2014, NSA served on EPIC an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68.

-   At 11:50am on October 16, 2014, EPIC extended a settlement offer to NSA, which it proceeded to withdraw, over the objection of NSA counsel, when NSA counsel filed the agreed upon Joint Status Report shortly before 7pm that same day.

The parties did "not reach[] an agreement regarding attorneys' fees."  Joint Status Report (ECF No. 43) ¶ 2.

On October 31, 2014, EPIC filed the instant motion.  *See* Pl.'s Mot. for Attorneys' Fees and Costs (ECF No. 44).  It seeks $59,298.29.  *Id.* at 3.

## STANDARD OF REVIEW

Under the Freedom of Information Act ("FOIA"), a "court may assess against the United States reasonable fees and other litigation costs reasonably incurred."  5 U.S.C. § 552(a)(4)(E)(i).  To receive costs and fees, a plaintiff must satisfy a two-step inquiry.  First, it must show that it is eligible for an award.  To meet this standard, a plaintiff must show that it has "substantially prevailed."  *Id.*; *see id.* § 552(a)(4)(E)(ii).  Second, a plaintiff must show that it is entitled to such fees.  *See Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981).  Courts apply "a multi-factor standard for evaluating" entitlement.  *McKinley v. FHFA*, 739 F.3d 707, 711 (D.C. Cir. 2014).  "Four non-exclusive factors typically govern the entitlement inquiry: (1)

the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature

of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding

of the requested documents."[1]  *Id.* (quotation marks and citations omitted).  The determination

whether a plaintiff is entitled to costs and fees generally "rests in the sound discretion of the

district court," *Church of Scientology*, 653 F.2d at 590, though there is in this Circuit a "'long-

established rule of never granting a fee award to a plaintiff whose FOIA claim was incorrect as a

matter of law,'" *Dorsen v. U.S. SEC*, 15 F. Supp. 3d 112, 121 (D.D.C. 2014) (quoting *Brayton v.

Office of the U.S. Trade Representative*, 641 F.3d 521, 526 (D.C. Cir. 2011)).

　　　　Even if a court determines that a plaintiff is eligible and entitled to fees, the court may

grant only those fees that are "reasonable."  5 U.S.C. § 552(a)(4)(E)(i).  An appropriate starting

point is typically the lodestar, a reasonable number of hours multiplied by a reasonable hourly

rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1982).  This Court has recognized that the

"*Laffey* Matrix" that was developed and maintained by the United States Attorney's Office for

the District of Columbia may serve as a useful guidepost for determining reasonable rates for

attorneys' fee in complex federal litigation in the District of Columbia. *McClam v. Dist. of

Columbia*, 808 F. Supp. 2d 184, 188-89 (D.D.C. 2011).  "The rates contained in the *Laffey*

Matrix are typically treated as the maximum rates that will be presumed to be reasonable when a

court reviews a petition for statutory attorney's fees."  *Id.*

---

[1] NSA is aware of the critiques concerning the four-factor entitlement inquiry generally, as well
as the public-benefit factor in particular.  *See Dorsen v. U.S. SEC*, 15 F. Supp. 3d 112, 120 n.8,
122 n.9 (D.D.C. 2014).  Still, and as this Court has observed, "this test continues to be binding in
application to cases before this Court."  *Id.* at 120 n.8.

**ARGUMENT**

**I.    THE COURT SHOULD REJECT EPIC'S MOTION IN ITS ENTIRETY**

**A.    The Inclusion of an Especially Egregious Position Merits Denial of EPIC's Motion for Costs and Fees in Full**

The Court should deny EPIC's motion in its entirety, and without examining a single billing record EPIC has submitted.  EPIC pursues an argument so outlandish that this Court should deny it and all the others EPIC appends to it.

        *1.    EPIC's Position that it Should Recover for Work Conducted Before Entry of Judgment is Frivolous.*

EPIC is seeking nearly $22,000 for work conducted before February 2014.  This includes $15,777.01 for work conducted in 2011 and 2013 concerning summary judgment, *e.g.*, Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. for Attorneys' Fees and Costs ("Pl.'s Fee Mem.") (ECF No. 44-1) at 5; *see* Pl.'s Dist. Ct. Case Billing Record ("Pl.'s Dist. Ct. Bills") (ECF No. 44-3) at 1-3, as well as $6,210 for appellate work conducted on or before January 22, 2014, *see* Pl.'s D.C. Circuit Case Billing Record ("Pl.'s D.C. Circuit Bills") (ECF No. 44-4) at 1.  EPIC makes this claim notwithstanding NSA's January 27, 2014 Offer of Judgment, which EPIC accepted, and the February 11, 2014 Judgment that was entered accordingly.

EPIC hardly discusses this history at all.  Indeed, the only mention in EPIC's brief of the Rule 68 Offer and resulting Judgment comes in a single sentence (and accompanying footnote) in its Factual Background section: "During the pendency of the appeal, EPIC accepted a Rule 68 Offer of Judgment for $3,500 from the NSA, dated January 27, 2014, 'in full resolution of all claims' *then before the Court* for 'all costs, including attorney's fees, incurred in this action.'"

Pl.'s Fee Mem. at 4 (citation omitted) (emphasis added); *see also id.* at 4 n.2 (referring to "issues upon which EPIC had substantially prevailed as of the date of the Rule 68 Offer of Judgment"). The Judgment, however, said nothing about resolving only those claims "then before the Court," or about "issues upon which EPIC had substantially prevailed as of the date of the Rule 68 Offer of Judgment."  Rather, the Clerk of Court was express that the Judgment being entered was "in full resolution of *all* claims . . . for *all* costs, including attorney's fees, incurred in this action. This offered amount includes *all* costs accrued, including *all* attorney's fees and *all* fees on fees."  Judgment at 1 (emphasis added).  The Offer of Judgment said the same thing.  *See* Def.'s Notice of Acceptance, Ex. A ("Defendant National Security Agency hereby offers to allow judgment to be taken against it . . . in full resolution of all claims of Plaintiff Electronic Privacy Information Center for all costs, including attorney's fees, incurred in this action.  This offered amount includes all costs accrued, including all attorney's fees and all fees on fees.").

EPIC has identified no reason for this Court to undo the Judgment already entered.  *Cf.* Fed. R. Civ. P. 59, 60.  Indeed, undoing the February Judgment would run precisely counter to Federal Rule of Civil Procedure 68, which exists for the "purpose of encouraging settlement." *Tunison v. Continental Airlines Corp.*, 162 F.3d 1187, 1193 (D.C. Cir. 1998); *see* Fed. R. Civ. P. 68(a) ("[A] party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued.  If . . . the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service.  The clerk must then enter judgment.").  Rule 68 would have no meaning at all if a party could accept an Offer of Judgment and then seek additional money in excess of the adjudged amount for claims already resolved—which is exactly what EPIC does here.

By accepting NSA's Rule 68 Offer of Judgment, EPIC released its claims for work

conducted on and before January 22, 2014—for which it seeks additional reimbursement now.

The resulting Judgment is binding, and EPIC offers no reason to alter it, amend it, or obtain relief

from it.  Nor could it.  The Court should summarily deny EPIC's attempt to recover additional

amounts for work conducted during that time.

> 2.      *For Prosecuting this Frivolous Position, EPIC Should Recover Nothing.*

As explained above, EPIC is attempting to recover fees for claims already released, in

contravention of a Judgment already entered, and with hardly a mention of what it is attempting

to accomplish.  EPIC presents an example of especially egregious overbilling, and courts may

properly deny fee motions in their entirety when confronted with such unreasonable requests.  As

the D.C. Circuit has explained, a court "may deny in its entirety a request for an outrageously

unreasonable amount, lest claimants feel free to make unreasonable demands, knowing that the

only unfavorable consequence of such misconduct would be reduction of their fee to what they

should have asked for in the first place."  *Envtl. Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258

(D.C. Cir. 1993) (quotation marks and citations omitted); *see LaPrade v. Kidder Peabody & Co.,

Inc.*, 146 F.3d 899, 906 (D.C. Cir. 1998) ("[A] district court might in some circumstances

consider a fee request, or a particular item within a fee request, so 'outrageously unreasonable'

that outright denial of the request or an item within the request would be appropriate." (citation

omitted)).

Denying this particular item within EPIC's larger fee request would not be enough.  Nor

would it be sufficient to tell EPIC not to do it again.  This Court has already admonished EPIC

not to engage in sharp billing practices.  *See Elec. Privacy Info. Ctr. v. U.S. DHS* ("*EPIC*"), 982

F. Supp. 2d 56, 64 n.3 (D.D.C. 2013) ("EPIC is now aware of the law.  This Court would not like

to see EPIC bill a case in this way again.  After all, . . . this Court could have in its discretion refused to award *any* fees." (quotation marks, citations and alterations omitted)).  EPIC's response seems to have been to find some other way to egregiously overbill the Government.  EPIC has already been warned, *see id.* at 64-65 & n.3; the Court should now take the next step and deny EPIC's fee petition in its entirety, lest it find some new and outrageous way next time to try to overcharge federal taxpayers, *see Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980) ("[A]ppellants' counsel submitted a claim which was so intolerably inflated that the District Court was warranted in departing from the usual practice and reacting vigorously to prevent such abuse of the court's authority to award reasonable compensation to counsel.") (quoted in part in *Cobell v. Norton*, 407 F. Supp. 2d 140, 162 (D.D.C. 2005)).

**B.      EPIC is Not Entitled to Fees.**

Even if the Court decides not to disqualify EPIC from seeking any fees for prosecution of this particularly outlandish argument, it should still deny EPIC's motion in its entirety because EPIC is not entitled to costs or fees.

As an initial matter, the fourth factor in the entitlement inquiry—"the reasonableness of the agency's withholding of the requested documents," *McKinley*, 739 F.3d at 711—presents a clear bar to EPIC's recovery.  As this Court has explained, "attorneys' fees may not be awarded if the government 'had a reasonable basis in law' for withholding the requested documents." *Dorsen*, 15 F. Supp. 3d at 123 (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1096 (D.C .Cir. 1992), *superseded by statute*, 5 U.S.C. § 552(a)(4)(E)(i), *as recognized in Summers v. U.S. Dep't of Justice*, 569 F.3d 500, 502 (D.C. Cir. 2009)).  In particular, the D.C. Circuit "has made clear that 'if the Government's position is correct as a matter of law, that will be dispositive.'"  *Id.* at 121 (alteration omitted) (quoting *Davy*, 550 F.3d at 1162).

10

Clearly the withholding of NSPD 54 was correct as a matter of law; this Court has already held that, granting NSA summary judgment "as it pertains to NSPD 54." Summ. J. Mem. Op. at 15. While EPIC offers anew its merits positions, *see* Pl.'s Fee Mem. at 10-11, the fact remains that this Court rejected those arguments and upheld the withholding of NSPD 54. And neither this Court nor the D.C. Circuit has said anything to question that analysis. While the D.C. Circuit did vacate the relevant portion of this Court's October 21, 2013 Memorandum Opinion, it did so because "the appeal no longer present[ed] a live controversy"—not because of any legal disagreement. Remand Order at 1. This Court's legal determination that FOIA does not require the release of NSPD 54 stands, and that conclusion merits denial of EPIC's motion in its entirety. *See Dorsen*, 15 F. Supp. 3d at 121 ("[T]he Circuit recently confirmed the 'long-established rule of never granting a fee award to a plaintiff whose FOIA claim was incorrect as a matter of law.'" (quoting *Brayton*, 641 F.3d at 526)).

Besides, "the fact that the [NSA] exercised its discretion to release [the] requested record[] does not demonstrate [EPIC's] entitlement to attorneys' fees." *Id.* at 124. In the *Dorsen* case earlier this year, this Court explained in some detail how "the rule applied in this Circuit avoids penalizing agencies that 'choose to relent for the sake of transparency and release requested documents without exposing themselves to monetary penalties.'" *Id.* at 124-25 (quoting *Brayton*, 641 F.3d at 528). EPIC would turn NSA's decision to release NSPD 54 into a $59,000 penalty—a position the D.C. Circuit has already rejected. *See Brayton*, 641 F.3d at 528 ("Under Brayton's approach, . . . agencies with legal authority to withhold requested documents . . . might hesitate to release the documents, since doing so would risk creating a 'substantially prevail[ing]' plaintiff who might be entitled to fees." (final alteration in original)). This Court should not punish NSA for trying to bring a mutually satisfactory end to this case that is fast

approaching its sixth year.  The public interest simply would not be served if agencies are made to pay for discretionary decisions to release documents.  *See Dorsen*, at 124-25 ("'[T]he fact that [the Government's] initial nondisclosure decision rested on a solid legal basis creates a safe harbor against the assessment of attorney fees.'" (quoting *Brayton*, 641 F.3d at 528)).

Though the fourth factor of the entitlement inquiry should in this case be "'dispositive,'" *id.* at 121 (quoting *Davy*, 550 F.3d at 1162), if the Court elects to consider the other entitlement factors, it should conclude that they too do not favor EPIC.  Under the first factor, courts consider the benefit to the public of the FOIA suit.  While "the release of any government document benefits the public by increasing its knowledge of its government," the D.C. Circuit has "held that Congress did not have this broadly defined benefit in mind" when it authorized FOIA fees.  *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995); *see, e.g.*, *Alliance for Responsible CFC Policy v. Costle,* 631 F. Supp. 1469, 1471 (D.D.C. 1986) ("The simple disclosure of government documents does not satisfy the public interest factor.").  Rather, this Court should "evaluate the specific documents at issue in the case at hand," with a focus on whether the release "is likely to add to the fund of information that citizens may use in making vital political choices."  *Cotton*, 63 F.3d at 1120 (quotation marks and citation omitted).

EPIC argues that the "disclosure of NSPD-54 pursuant to EPIC's lawsuit has contributed directly" to the public debate over cybersecurity.  Pl.'s Fee Mem. at 9.  EPIC does not prove the point.  Most of the articles EPIC cites were written in 2009 and 2010, *see id.* at 8-9, and the June 2014 release of NSPD 54 obviously played no role in those treatments.

EPIC identifies only one public news account that makes any reference to the release of NSPD 54 whatsoever.  *See id.* at 9 & n.7.  This is a single-paragraph item from a longer blog post offering daily updates on cybersecurity, and it does not support EPIC's position that

NSPD 54 has contributed to the public debate.  Indeed, in the very item reporting on the release

of NSPD 54, the authors of the post openly questioned the importance of that release.[2]  Thus, the

only news item EPIC cites even mentioning the release of NSPD 54 underscores that there was

little, if any, public benefit associated with the release.  *See Tax Analysts*, 965 F.2d at 1094-95

(explaining that district court made "the key . . . point—that district court tax decisions (and thus

the Tax Division's enforcement record) were already in the public domain"); *Nw. Coal. For*

*Alternatives to Pesticides v. Browner*, 965 F. Supp. 59, 64 (D.D.C. 1997) ("The court must also

consider the extent to which the information released is already in the public domain.").  EPIC

simply cannot establish any "potential public value" of NSPD 54, *see Davy*, 550 F.3d at 1159,

when the only outlet it identifies as having picked up the story publicly states that the document

will be of such limited use.

As a final matter, EPIC asserts that it has "derived no commercial benefit from its FOIA

request or lawsuit."  Pl.'s Fee Mem. at 10.  While this Court has stated previously that "the

'commercial benefit' and 'nature of interest' elements" of the entitlement inquiry "weigh in

favor of" EPIC, *Elec. Privacy Info. Ctr. v. U.S. DHS* ("*EPIC*"), 811 F. Supp. 2d 216, 235

(D.D.C. 2011), it is worth noting that displayed prominently at the top of the EPIC newsletter

describing the release of NSPD 54, *see* Pl.'s Fee Mem. at 7 n.4, is the message, "Defend Privacy.

---

[2] Joseph Marks & David Perera, *First look: Cost of Cybercrime High, Rising – House Appropriators to Take Up DHS Cyber Spending – Rancor Follows Vodafone Release*, Politico – Morning Cybersecurity (June 9, 2014), *available at* http://www.politico.com/ morningcybersecurity/0614/morningcybersecurity14218.html ("[T]he document revealed little we didn't already know following President Barack Obama's March 2010 declassification of the [Comprehensive National Cybersecurity Initiative].  Here's the most incendiary statement: "Hackers and insiders have penetrated or shut down utilities in countries on at least three continents."  Well, now we know.").

Support EPIC," along with a link to a webpage allowing readers to donate.[3]  Whether or not

EPIC has received any donations on account of NSPD 54, it is certainly the case that EPIC has

tried to solicit donations based on NSA's discretionary release of it.

At bottom, whether the Court applies the bright-line rule that, "if the Government's

position is correct as a matter of law, that will be dispositive," or whether the Court weighs

together all the "relevant considerations in the entitlement calculus," *Dorsen*, 15 F. Supp. 3d at

121 (quotation marks, citations and alterations omitted), it should conclude that EPIC is not

entitled to costs and fees.

## II.    **EPIC HAS MADE NUMEROUS UNREASONABLE CLAIMS FOR FEES**

Even if the Court determines that EPIC is entitled to fees and that it will examine EPIC's

billing submissions (which it should not), it should still substantially discount any award because

EPIC makes numerous unreasonable requests for reimbursement.  Indeed, the incomplete

affidavits and reconstituted billing records EPIC submits fall well short of establishing that EPIC

is owed $59,298.29.

### A.    **EPIC has Failed to Provide Contemporaneous Billing Records**

"The D.C. Circuit 'has been very explicit'" about the type of documentation a FOIA

requester must bring forth to support a claim for fees.  *EPIC*, 999 F. Supp. 2d at 72 (quoting

*Weisberg v. Webster*, 749 F.2d 864, 872 (D.C. Cir. 1984)).  "'Casual, after-the-fact estimates of

time expended on a case are insufficient.'"  *Id.* (quoting *Nat'l Ass'n of Concerned Veterans v.*

*Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  Rather, a party seeking fees "must provide

'contemporaneous, complete and standardized time records which accurately reflect the work

done by each attorney.'"  *Id.* (quoting *Concerned Veterans*, 675 F.2d at 1327).

---

[3] EPIC Alert 21.11 (June 16, 2014), *available at* https://epic.org/alert/epic_alert_21.11.html.

EPIC claims to possess contemporaneous time records.  Indeed, each of its seven affiants claims to have generated such records him- or herself.  *See* Aff. of Alan Butler ("Butler Aff.") (ECF No. 44-6) ¶ 7 ("This calculation is supported by the contemporaneously-generated time records that *I* recorded throughout the litigation of the above-captioned matter." (emphasis added)); Aff. of Amie Stepanovich (ECF No. 44-7) ¶ 7 (same); Aff. of David Husband ("Husband Aff.") (ECF No. 44-8) ¶ 7 (same); Aff. of Ginger McCall ("McCall Aff.") (ECF No. 44-9) ¶ 8 (same); Aff. of Julia Horwitz (Horwitz Aff.") (ECF No. 44-10) ¶ 7 (same); Aff. of Marc Rotenberg ("Rotenberg Aff.") (ECF No. 44-11) ¶ 9 (same); Aff. of T. John Tran ("Tran Aff.") (ECF No. 44-12) ¶ 7 (same).  Yet, neither NSA nor this Court is able to inspect these "contemporaneously-generated time records" the attorneys themselves "recorded throughout the litigation," because EPIC has not submitted them for review.  Rather, EPIC has brought forth reconstituted composite records purporting to summarize the work its various attorneys conducted across many months (and several years).  In fact, each page of EPIC's billing records is marked unequivocally with the following stamp: "Date Prepared: 10/31/2014."  *See* Pl.'s Dist. Ct. Case Billing Record (ECF No. 44-3) at 1-3; Pl.'s D.C. Circuit Bills at 1-6; Pl.'s Fees on Fees Bills at 1-5.  The only thing to which the submitted records are contemporaneous is EPIC's fee motion.

In *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice* ("*CREW*"), a FOIA requester did substantially the same thing EPIC has done here: submit composite billing summaries based on records its attorneys claimed to have generated at the time work was completed.  825 F. Supp. 2d 226, 230 (D.D.C. 2011).  This Court held that the attorneys' "timekeeping practices fell significantly below what is expected of fee applicants in this Circuit."  *Id.* at 230.  The Court proceeded to explain that the failure was especially glaring

in light of the fact that the FOIA requester "was aware it would be seeking a fee award," and was represented by "experienced litigators." *Id.* at 230-31 (citation omitted).  The same can be said of EPIC.  *See, e.g.*, Rotenberg Aff. ¶¶ 5-7.

If anything, EPIC's failures in this case are greater than CREW's in *CREW*.  In *CREW*, the fee requester described what its actual billing records looked like, *see* 825 F. Supp. 2d at 230 ("They kept 'daily time sheets' that 'indicated the number of hours (and in some cases half-hour increments) spent on specific cases, but did not itemize the specific tasks they performed for each of those cases.'" (quoting CREW's evidence) (alterations omitted)), and explained how those contemporaneous records were used to generate the billing records submitted to the Court, *see id.* ("Working from these time sheets, Weismann attests she was able to 'determine [her] time for purposes of recovering [ ] fees in this matter' as follows . . . ." (quoting CREW's evidence) (alterations in original)).  EPIC has not described the nature of its "contemporaneously-generated time records," nor explained how it went about converting those records into what now appears on the docket.  While this Court was not impressed by CREW's explanation, *see id.* ("CREW offers no real excuse for its inadequate timekeeping habits."), at the very least CREW tried to offer one.  EPIC has not.

EPIC's composite records leave NSA unable to determine how or why EPIC could have spent so much more money litigating after November 2013 than before.  During fee negotiations in November 2013, EPIC submitted to NSA records indicating that it had, as of November 27, 2013, spent a *total* of $26,720.50 litigating this case.  *See* EPIC Draft Case Billing Records (Nov. 27, 2013) (attached hereto as Ex. B).  That represented work over four years of litigation, including, among other things, an eleven-page Complaint, and three substantive briefs totaling

16

fifty-five pages.[4]  That comes to approximately $405 per page of substantive filings.[5]

Notwithstanding that, EPIC claims now to have spent $33,890 litigating this case for several

months in the Court of Appeals—well more than EPIC had spent on this entire case pre-appeal.

EPIC made only one substantive filing during that time, a thirty-seven-page brief that was no

different in kind from EPIC's previous filings (and had a larger font at that).  That comes to

approximately $916 per page of substantive filings[6]—more than twice as expensive as litigating

in the District Court.

      The Court in *CREW* reduced CREW's ultimate award by 37.5%, *see* 825 F. Supp. 2d at

231, and the reduction should be even greater here.  EPIC has not submitted the type of billing

records "expected of fee applicants in this Circuit."  *Id.* at 230.  EPIC should not be rewarded for

its additional decision to withhold crucial details concerning what its actual, contemporaneous,

attorney-generated records look like, or how those records were converted into the documents

EPIC has submitted—especially when there are serious questions concerning NSA's ability to

scrutinize EPIC's submissions, and EPIC's efficiency during the closing months of this case.

      NSA proposes that EPIC's award for work conducted in the Court of Appeals, if any, be

discounted by a minimum of 56%, which would serve to compensate EPIC at the rate of

---

[4] EPIC's opposition to defendants' motion to dismiss was nine pages.  EPIC's opening summary judgment brief was twenty-seven pages, and was accompanied by a four-page statement of material facts and a two-page response to NSA's statement of material facts.  EPIC's summary judgment reply was thirteen pages.  Thus, EPIC produced fifty-five pages of substantive motion filings, in addition to the eleven-page complaint.

[5] 27,720.50 / 66 = 404.86.

[6] 33,890 / 37 = 915.95.

efficiency it demonstrated earlier in (and at most times during) this case.[7]  Without sufficient

records it can inspect, NSA should not be made to pay for the substantial inflation of costs that

EPIC claims to have incurred late in this case.

### B.     For Four Attorneys, EPIC Has Not Submitted Evidence Sufficient to Supports its Claimed Reimbursement Rates

EPIC claims that six people worked on this case after entry of the February Judgment:

Alan Butler, Julia Horwitz, David Husband, Ginger McCall, Marc Rotenberg, and John Tran.

EPIC has submitted evidence concerning whether Mr. Rotenberg and Mr. Tran were licensed to

practice law at the time they worked on this case, *see* Rotenberg Aff. ¶ 5; Tran Aff. ¶ 4, and NSA

does not dispute the manner in which EPIC has calculated the hourly reimbursable rates under

the *Laffey* Matrix for those two employees.  The same cannot be said, however, for Mr. Butler,

Ms. Horwitz, Mr. Husband, or Ms. McCall.

The evidence in this record shows when these four attorneys graduated from law school,

and that they all were, on October 29, 2014, licensed to practice law.  *See* Butler Aff. ¶¶ 3, 5;

Horwitz Aff. ¶¶ 3, 5; Husband Aff. ¶¶ 3, 5; McCall Aff. ¶¶ 3, 4.  Yet EPIC has provided no

evidence concerning when these attorneys were admitted to the bar, or whether they were

licensed to practice law at the time they worked on this case.  *See Elec. Privacy Info. Ctr. v. FBI*

("*EPIC*"), --- F. Supp. 3d ---, 2014 WL 5713859, at *10 (D.D.C. Nov. 5, 2014) ("Mr. Scott's

Affidavit, offered by EPIC, states that he is a 'member in good standing of the Bar of New York'

but provides no date of admission." (citation omitted)).  It is EPIC's burden to demonstrate that it

merits fees, *see McKinley*, 739 F.3d at 710, and this Court has held on multiple occasions that the

*Laffey* junior-associate rate "does not kick in until the graduate is admitted to a bar," *EPIC*, 982

---

[7] $916 per substantive page must be reduced by 56% to yield $405 per substantive page.  In other words, for applicable charges, EPIC should recover only 44% of what it seeks.  Or, mathematically, $405 / 916 = 44\%$.

F. Supp. 2d at 61.  Given EPIC's repeated failure to "provide an admission date" for the attorneys who worked on this case, the Court should "assume for purposes of deciding this motion that all of [their] time on this case was billed before [they were] admitted to the bar." *EPIC*, 999 F. Supp. 2d at 71 n.16.

For example, EPIC seeks to recover fees for Mr. Husband's work at the junior-associate rate.  Mr. Husband graduated from law school in 2013, and claims to currently be a member of the Virginia State Bar.  Husband Aff. ¶¶ 3, 5.  EPIC has provided no evidence concerning when Mr. Husband was admitted to the bar, and the undersigned's review of the Virginia State Bar's online Lawyer Directory provides no further indication.  The Court should not presume that Mr. Husband was licensed to practice law at the time he worked on this case (late March 2014), and accordingly should consider reimbursing EPIC for his services at only the relevant law clerk rate, or $145 per hour.  *See EPIC*, 2014 WL 5713859, at *11 ("Because EPIC has not shown that Mr. Scott was a licensed attorney while working on this case in 2013, the Court adjusts Mr. Scott's rate for 2013 from $245 to $145, the applicable *Laffey* Matrix law clerk and paralegal rate." (citation omitted)); *cf. EPIC*, 999 F. Supp. 2d at 70 ("[N]one of these attorneys—all 2012 law school graduates—were admitted to practice law in any jurisdiction while they worked on this case.  Hence, they are more properly categorized under the heading 'Paralegals & Law Clerks,' based upon their bar status during the relevant time period, and the fact that they had not yet achieved '1-3 years' of legal experience." (citations omitted)); *EPIC*, 811 F. Supp. 2d at 238 ("[B]ecause the plaintiff does not refute that one of its attorneys . . . conducted work on this litigation prior to her admittance to the bar, the court applies the 'paralegal/clerk' *Laffey* rate to this time."); *EPIC*, 982 F. Supp. 2d at 63-64 ("One attorney . . . was not a member of any bar in 2011, when he did a substantial amount of work on the underlying case.  For that reason, his

billing rate during that time should be $140 per hour rather than the claimed $240." (citation omitted)).[8]

Even if the Court is able to independently ascertain whether these attorneys were admitted at the time they worked on this case, it should still reimburse EPIC for their work at only the law clerk rate.  For example, Ms. Horwitz graduated from law school in 2012.  Horwitz Aff. ¶ 3.  While prior caselaw suggests that Ms. Horwitz was licensed to practice law in December 2012, it should not be NSA's responsibility (or the Court's) to triangulate her time of admission to the bar so that EPIC can recover the maximum amount available under the *Laffey* Matrix—especially when questions concerning her date of admission were the subject of prior litigation.  *See EPIC*, 999 F. Supp. 2d at 71 n.17 (determining after some investigation that Ms. Horwitz "graduated from law school on June 9, 2012" (citations omitted)); *id.* at 71-72 (noting that Ms. Horwitz had done work "five months after her bar admission and eleven months after her graduation from law school").  In any event, judicial notice of her December 2012 admission to the bar does not establish that she was licensed to practice law in March 2014, when she worked on this case.  Licenses do lapse.

The lack of evidence concerning admission is especially problematic when a FOIA requester claims, as EPIC does here, that an attorney changes brackets during the course of the case.  In particular, EPIC would have Mr. Butler made the leap from the junior-associate bracket to the senior-associate bracket sometime between April 2, 2014 (when EPIC billed $250 per hour

---

[8] Even if the Court were to conclude that Mr. Husband was admitted to practice law at the relevant time, it should still reduce EPIC's recovery for his work because he would have had "less than a full year of legal experience."  *EPIC*, 999 F. Supp. 2d at 72.  When previously considering work conducted by a first-year attorney, this Court has "split the difference" and awarded fees "halfway" between the law clerk rate and the junior-attorney rate.  *Id.*

for his work), and June 5, 2014 (when EPIC billed $300 per hour for his work).[9]  *See* Pl.'s D.C.

Circuit Bills at 4-5.  Yet, there is no evidence to suggest that he completed his third year of

practice during that window.  In fact, a search of the website of the State Bar of California shows

that Mr. Butler was admitted to the California bar in December 2011, meaning that he will soon

complete his third year of practice, but did not do so this Spring.

Neither this Court nor NSA should be put to the burden of attempting to reconstruct, from

public records or prior caselaw, when EPIC's attorneys were admitted to the bar.  EPIC has

ready access to its attorneys' practice history; it could have and should have brought forth with

its motion all the relevant evidence.  Obviously, it did not.  Nor should EPIC be permitted to cure

these evidentiary deficiencies with its reply brief, *see EPIC*, 999 F. Supp. 2d at 71 n.16 ("EPIC's

reply brief does not offer any assistance (after being put on notice of the issue in DHS's

opposition)."), as NSA has already been forced to try to put together these pieces on its own (and

the Court, if it were so inclined, would have to spend additional time considering this matter,

too).  This Court has already made EPIC aware of the problems that arise when a FOIA requester

"does not provide an admission date," *id.*; *see EPIC*, 2014 WL 5713859, at *10 (noting that

affidavit submitted by EPIC "provide[d] no date of admission"), and it has already expended its

own resources determining, without the benefit of evidentiary submissions, when EPIC attorneys

were admitted to the bar, *see EPIC*, 999 F. Supp. 2d at 71-72 & n.17.  This time, when

confronted by the same problem from the same party, the Court should simply award fees at the

law clerk rate, which, for these four attorneys, is all the record evidence supports.

---

[9] On June 1, 2014, the rates did change slightly with passage into the 2014-15 *Laffey* year.  This change would increase the junior-associate rate modestly, from $250 to $255 per hour.

### C.     "Conferences" and Overstaffing

At least two times on recent occasions, this Court has faulted EPIC for "overstaffing." *EPIC*, 982 F. Supp. 2d at 64 n.3 (quotation marks and citation omitted); *see EPIC*, 2014 WL 5713859, at *10 (noting "seven instances of triple-billed telephone conference calls").  EPIC has made the same mistake again, triple-billing a conference call with NSA counsel on June 5, 2014.  *See* Pl.'s D.C. Circuit Bills at 5.  This is precisely what the Court determined was "unnecessary for EPIC to bill" in *EPIC v. FBI*, 2014 WL 5713859, at *10.  This Court should do here exactly what that Court did there: "reduce[] the amount EPIC may recover for [the] triple-billed telephone conference call to the time of one junior attorney at the lowest *Laffey* attorney rate." *Id.*

EPIC's billings for "conferences" are curious in general.  EPIC bills $364 for a June 6, 2014 "Conference to discuss remand and vacatur" at which Mr. Rotenberg participated, but it is not clear with whom such conference was held, or with whom Mr. Rotenberg was conferring. *See* Pl.'s D.C. Circuit Bills at 5.  There is an identical problem with a June 9, 2014 "Conference to discuss joint motion for remand and vacatur" billed at $520.  *See id.*  Such entries are "excessively vague," and should receive the 60% discount applied to such entries in *EPIC*, 999 F. Supp. 2d at 73-74.

### D.     Fees on Fees Should be Substantially Discounted on Account of EPIC's Insufficient Billing Records

EPIC's attempt to obtain fees on fees places the inadequacy of its billing records on full display.  Most notably, evidence within NSA's possession reveals that EPIC has substantially revised its composite fee records, with the result of removing significant detail adverse to EPIC's fees on fees position.

In particular, draft billing records EPIC forwarded to NSA make clear that the flurry of activity that occurred at EPIC in early September 2014 was focused largely on researching "Rule 68 Offers of Judgment for determination of fees."  EPIC Draft Case Billing Records (Sept. 11, 2014) ("Sept. 2014 Draft Bills") (attached hereto as Ex. C) at 8-9; *see generally* Joint Status Report (ECF No. 43) ¶ 2 ("On September 11, 2014, Plaintiff submitted what it considers to be a detailed bill of fees and costs to the Defendant.").  Indeed, EPIC's draft bills contain $4,646 in fees (over 31.2 attorney hours) expressly attributed to the Rule 68 issue.[10]  *See* Sept. 2014 Draft Bills at 8-9.  Yet, all reference to the Rule 68 research has been excised from the records EPIC has submitted to the Court; the entries that had referred expressly to the Rule 68 issue have been replaced with anodyne references to "fee claims."  *See* Pl.'s Fees on Fees Bills at 1-2.

NSA made EPIC aware during fee discussions that it took a dim view of EPIC's attempts to recover for work done before entry of the February Judgment.  EPIC was thus on notice that NSA would likely raise this issue in its opposition brief (which NSA has done), and that NSA would object to EPIC's attempts to recover for its research into this non-issue (which NSA does).  But the records EPIC has submitted to this Court, which have been removed of key details like the one identified above, do not give NSA a sufficient opportunity to closely scrutinize EPIC's billing practices.  From looking at those records, there would be no way to know that EPIC spent any time considering the Rule 68 question, let alone over thirty hours.  It is only happenstance that NSA was able to identify this issue by resort to draft bills it happened to have (and may lack

---

[10] Clearly EPIC's September 2014 work on "Rule 68" concerned whether the January 2014 Offer of Judgment and resulting February 2014 Judgment presented a bar to recovery.  While NSA did make EPIC two additional Offers of Judgment, those did not come until October 2014.

Additionally, the fruits of whatever legal research EPIC conducted on Rule 68 are notably absent from its opening brief, which discussed the Judgment only in passing, *see* Pl.'s Fee Mem. at 4 & n.2, and offered no argument as to why EPIC should not be bound by it.

next time).  And there may be other latent problems with EPIC's records of which NSA cannot

and will never become aware.

On another note, fee negotiations should only be compensable when communications

This issue highlights how EPIC's submissions have compromised the ability of NSA and

the Court to make "'an informed determination as to the merits of the application.'"  *CREW*, 825

F. Supp. 2d at 231 (quoting *Concerned Veterans*, 675 F.2d at 1327).  The entire episode

underscores why it is so important that fee petitioners submit billing records that were generated

*by the attorneys who litigated the case at the time those attorneys were doing their work*.  That

way, parties opposing fee motions can competently identify those charges they would dispute.

On another note, fee negotiations should only be compensable when communications

between the parties are reasonably calculated to be productive.  *C.f., e.g.*, LCvR 7(m)

("[C]ounsel shall discuss the anticipated motion with opposing counsel . . . in a *good-faith* effort

. . . to narrow the areas of disagreement." (emphasis added)).  During fee discussions in this case,

EPIC extended to NSA two "exploding" offers purporting to resolve fees.  *See supra* at 5.  Each

offer was placed on the table for less than twenty-four hours, and withdrawn over the objection

of NSA counsel, and before NSA had had a reasonable opportunity to consider it.  *Contra* Fed.

R. Civ. P. 68(a) (providing a party fourteen days to consider an Offer of Judgment).  EPIC is

free, of course, to negotiate however it sees fit.  But NSA should not be made to reimburse EPIC

for concocting a strategy that culminates in the extension and rapid withdrawal of not one but

two exploding offers, a tactic that is, under the circumstances presented in this case, entirely

unproductive.

If NSA is made to reimburse EPIC for engaging in these tactics, fee requesters will come

to anticipate that, whatever they do to extend negotiations, it will likely be profitable.  It would

also create a strong disincentive for any federal agency to engage substantively with FOIA

requesters in fee negotiations, knowing that it may ultimately have to pay a premium for the privilege.  Neither the interests of FOIA, or of this Court, would be served if agencies are made to incur unreasonable costs for engaging in good-faith negotiations.

In light of the shortcomings of EPIC's fees on fees submissions, NSA proposes that the Court disallow all charges on or before October 16, 2014, when EPIC may have been researching Rule 68, or crafting its exploding-offer strategy.  For the balance of the bills, NSA proposes that EPIC's fees on fees be reduced by the same 56% appropriate for EPIC's appellate billing, to further reflect the inadequacy of EPIC's records.

## III.    NSA'S PROPOSED CALCULATIONS

EPIC seeks reimbursement for work conducted on summary judgment, in the Court of Appeals, and seeking fees on fees.  As outlined in greater detail above, EPIC should recover nothing.  If the Court determines, however, that EPIC is eligible and entitled to fees, NSA proposes (without prejudice to its position of no recovery) that the EPIC's claims be discounted as follows:

### A.    District Court

EPIC seeks **$15,777.01**.

These claims were already released and resolved.  *See* Def.'s Notice of Acceptance; Judgment.  The Court should **deduct $15,777.01**.

For its work on summary judgment, EPIC should recover **$0**.

### B.    Court of Appeals

EPIC seeks **$33,890.00**.

The first seven entries on this bill—totaling $6,210—concern work conducted on or before January 22, 2014.  These claims were already released and resolved.  *See* Def.'s Notice of Acceptance; Judgment.  The Court should **deduct $6,210**.

Mr. Butler worked 50.6 hours after Judgment was entered but before June 1, 2014 (when the *Laffey* rates rose slightly).  EPIC billed this work at $250 per hour, but it should have been billed at $145 per hour.  That is the difference between $12,650 and $7,221.  The Court should **deduct $5,429**.

Mr. Butler worked on the appeal for 0.8 hours on or after June 1, 2014.  EPIC billed this work at $300 per hour, but it should have been billed at $150 per hour.  That is the difference between $240 and $120.  The Court should **deduct $120**.

Ms. McCall worked 2.4 hours after Judgment was entered but before June 1, 2014.  EPIC billed this work at $295 per hour, but it should have been billed at $145 per hour.  That is the difference between $708 and $348.  The Court should **deduct $360**.

Ms. McCall worked on the appeal for 0.6 hours on or after June 1, 2014.  EPIC billed this work at $300 per hour, but it should have been billed at $150 per hour.  That is the difference between $180 and $90.  The Court should **deduct $90**.

Mr. Husband worked 10.8 hours after Judgment was entered but before June 1, 2014.  EPIC billed this work at $250 per hour, but it should have been billed at $145 per hour.  That is the difference between $2,700 and $1,566.  The Court should **deduct $1,134**.

Ms. Horwitz worked 12.0 hours after Judgment was entered but before June 1, 2014.  EPIC billed this work at $250 per hour, but it should have been billed at $145 per hour.  That is the difference between $3,000 and $1,740.  The Court should **deduct $1,260**.

"Conference" deductions should be made.  The triple-billed teleconference with NSA counsel on June 5, 2014, should be reduced "to the time of one junior attorney at the lowest *Laffey* attorney rate," per *EPIC v. FBI*, 2014 WL 5713859, at *10.  The 0.3 hour call should be billed at $76.50—well below the $246 current price (after making the above rate-based deductions).  The Court should **deduct $169.50**.

Likewise, the June 6 and June 9, 2014 "conferences" in which Mr. Rotenberg participated alone—currently billed at $884—should be discounted by 60%, as these entries are excessively vague.  The Court should **deduct $530.40**.

After making these deductions, the balance is $18,587.10.  This figure should then be reduced by 56%, on account of the insufficient billing entries.  In other words, the Court should **deduct $10,408.78**.

That leaves $8,178.32.  If the Court decides to reimburse EPIC for its work in the Court of Appeals, it should award EPIC **no more than $8,178.32**.

### C      Fees on Fees

EPIC seeks **$8,901.00**.

The first twenty-seven entries on this bill—totaling $4,052—concern work conducted on or before October 16, 2014.  As explained above, the insufficient billing entries do not enable NSA to determine when EPIC was working on the Rule 68 issue, or when it was crafting the ill-conceived exploding-offer strategy, neither of which should be compensable.  The Court should **deduct $4,052**.

Mr. Butler worked 6.4 hours on or after October 17, 2014.  EPIC billed this work at $300 per hour, but it should have been billed at $150 per hour.  That is the difference between $1,920 and $960.  The Court should **deduct $960**.

27

Ms. McCall worked 0.7 hours on or after October 17, 2014.  EPIC billed this work at $300 per hour, but it should have been billed at $150 per hour.  That is the difference between $210 and $105.  The Court should **deduct $105**.

After making these deductions, the balance is $3,784.  This figure should then be reduced by 56%, on account of the insufficient billing entries.  In other words, the Court should **deduct $2,119.04**.

That leaves $1,664.96.  If the Court decides to reimburse EPIC for its work on fees on fees, it should award EPIC **no more than $1,664.96**.

### D.     Costs

EPIC seeks **$730.28**.

NSA would not object to reimbursing EPIC for these items.

If the Court decides to reimburse EPIC for its costs, it should award EPIC **no more than $730.28**.

* * *

Thus, if the Court determines that EPIC is eligible and entitled to costs and fees, NSA proposes that the EPIC receive no more than $10,573.56.

## CONCLUSION

For the foregoing reasons, NSA respectfully requests that the Court deny EPIC's motion for costs and fees.

Dated: November 24, 2014          Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

   /s/ Gregory Dworkowitz
GREGORY DWORKOWITZ
Trial Attorney
N.Y. Bar Registration No. 4796041
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7107
Washington, DC  20530
Tel.: (202) 305-8576
Fax: (202) 616-8470
Email: gregory.p.dworkowitz@usdoj.gov

Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2014, I caused a true and correct copy of the

foregoing Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's

Motion for Attorneys' Fees and Costs to be served on plaintiff's counsel by way of the Court's

electronic filing system.

Dated:      November 24, 2014          _/s/ Gregory Dworkowitz
                                       GREGORY DWORKOWITZ