**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER ) ) ) ) Plaintiff, ) v. ) ) NATIONAL SECURITY AGENCY ) ) Defendant. ) ) | No. 1:10-cv-00196 (BAH) |

<u>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**</u>

EPIC is clearly eligible for and entitled to recover attorneys' fees in this case. Not only did EPIC ultimately obtain public release of NSPD-54, EPIC also obtained *vacatur* of an adverse ruling. Under either theory, EPIC has "substantially prevailed." Contrary to the government's assertions, EPIC did not waive its claims to fees concerning NSPD-54; the government had no reasonable basis in law for withholding the document; and EPIC's diligent work in this matter produced the release of a Presidential Directive concerning cyber security authority. It is difficult to imagine a stronger claim of eligibility and entitlement to fees in a FOIA case. Moreover, EPIC kept clear, detailed, and contemporaneous billing records, and properly billed for reasonable time spent, including efforts to ensure that the government complied with this Court's scheduling orders. Contrary to counsel for the NSA's baseless claims, courts have routinely awarded EPIC significant fees in FOIA cases. One court held recently that EPIC is the "quintessential requestor of government information envisioned by the FOIA." *EPIC v. DHS*, 982 F. Supp. 2d 56, 63 (D.D.C. 2013).

The Court should award EPIC $68,354.01 in fees and $730.28 in costs, including $9,786 in fees on fees for the preparation of this Reply, as outlined in the Exhibits. *See* Ex. 1, Decl. of Alan Butler at ¶ 8. *See also* Ex. 2, Sup. Aff. Alan Butler; Ex. 3, Sup. Aff. Marc Rotenberg; Ex. 4, Sup. Aff. T. John Tran.

## I. The NSA's Argument That All Fees Should Be Denied Is Meritless

The NSA does not cite a single case in support of its claim that EPIC's fees request is "frivolous," nor does the agency explain why EPIC's fee request lacks merit. EPIC does not seek to "undo" the Judgment entered by this Court on February 11, 2014. Instead, EPIC seeks to recover on its FOIA fee claim that arose as a result of the NSA's disclosure of NSPD-54 and the D.C. Circuit's order vacating part of this Court's ruling on summary judgment. The Rule 68 Offer of Judgment concerned all claims that EPIC had *as of the date that the offer was signed*. Not only did EPIC not have any fee claim related to NSPD-54 on the date of the offer, this Court had held that it had no jurisdiction over any FOIA claims related to the withholding of NSPD-54.

The term "frivolous" does not appear in the FOIA's text, nor has the term been analyzed at length in FOIA cases in this Circuit. However, in other contexts the term has referred to actions or appeals "based on utter lack of merit." *See, e.g.*, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (articulating that under the federal *in forma pauperis* statute, an appeal is frivolous "where none of the legal points are arguable on their merits," and claim is frivolous where it advances an "inarguable legal conclusion" or "fanciful factual allegation.") (internal citation omitted)); *Butler v. DOJ*, 492 F.3d 440, 443 (D.C. Cir. 2007) (defining the term under the meaning of the Prison Litigation Reform Act). The NSA has not cited any cases or offered evidence to show that EPIC's fee claim is based on utter lack of merit.

As both parties have made clear, the matter before this Court has followed an unusual course, but that does not diminish EPIC's fee claim nor render it "frivolous." The NSA has argued that by seeking fees for work to obtain NSPD-54 prior to this Court's order of February 11, 2014, EPIC seeks to "undo the Judgment already entered" on the Rule 68 Offer. Def.'s Opp'n at 8. That is entirely incorrect. EPIC is not seeking fees for work that was subject to the Rule 68 Offer; EPIC is seeking fees for work to obtain NSPD-54, which was not subject to the Rule 68 Offer. In the Rule 68 Offer, the NSA allowed a judgment to be taken against the agency "in the amount of $3,500.00 . . . in full resolution of all claims of Plaintiff Electronic Privacy Information Center for all costs, including attorney's fees, incurred in this action." J. On Offer & Acceptance, ECF No. 37. When the Judgment was entered, EPIC had not obtained NSPD-54, was not entitled to or eligible for fees related to its work to obtain NSPD-54, and this Court had ruled that the request for NSPD-54 was not properly before the Court. This Court made clear in its opinion that "NSPD-54 is not an agency record for the purposes of the FOIA under the *Judicial Watch* standard," and that the Court therefore had no jurisdiction to grant EPIC relief under the FOIA for the withholding of NSPD-54. Mem. Op. at 24, 7-8 n. 5. This portion of the Court's opinion was subsequently vacated by the D.C. Circuit on July 31, 2014. Order of USCA, ECF No. 38.

As of the date of the Rule 68 Offer the Court lacked jurisdiction to rule on any FOIA fee claim concerning NSPD-54. EPIC had no fee claim related to NSPD-54 as of that date. Therefore claims covered by the Rule 68 Offer could not have included any claims for fees incurred in obtaining NSPD-54.

The NSA, unable to address the Court's jurisdictional determination and the absence of any fee claim related to NSPD-54 at the time of the Rule 68 offer, has made a meritless argument that EPIC's fee motion is an "example of especially egregious overbilling" and suggests that the Court should exercise its discretion to "deny in its entirety a request for an outrageously unreasonable amount." Def.'s Opp'n at 9 (citing *Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993)). The power to award fees falls within the Court's discretion, but the NSA has failed to explain in fact why EPIC's fee claim is "outrageously unreasonable" or to cite any cases that support the outcome the agency seeks.

First, the only case NSA cites, *Environmental Defense Fund, Inc. v. Reilly*, 1 F.3d 1254 (D.C. Cir. 1993), offers no support for the agency's position. *Reilly* addresses a fee request of an "outrageously unreasonable amount" based on inflated billing records. 1 F.3d at 1258 (quoting *Brown v. Stackler*, 612 F.2d 1057 (7th Cir. 1980)). The Court in *Reilly* was referring to the situation in *Stackler* where a plaintiff asserted an "intolerably inflated" claim for 800 hours (most of which was billed by volunteer law students). *See Brown*, 612 F.2d at 1057. The NSA has made no assertion that EPIC inflated its hours or otherwise billed for an unreasonable amount of time in this matter. *Reilly* is simply inapplicable.

Second, the NSA's attempt to portray EPIC as a chronic petitioner of unreasonable fee claims is baseless and entirely unrelated to the dispute before the Court about fees for the work on NSPD-54. The agency states that a court "has already admonished EPIC for sharp billing practices," and "EPIC's response seems to have been to find some other way to egregiously bill the Government." Def.'s Opp'n at 9-10. The

agency cites a single case in which a court criticized a few minor issues with the fee

petition, but ultimately granted EPIC's fee request. *EPIC v. DHS*, 982 F. Supp. 2d 56, 64

(D.D.C. 2013) (awarding $3,321.95 in fees and costs).[1]  Nothing in the opinion suggests

EPIC engaged in "egregious" practices the as NSA has alleged. In fact, courts have

routinely ruled favorably on EPIC fee claims, typically awarding almost the entire fee

amount sought by EPIC. *See*, *e.g.*, *EPIC v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013)

(awarding $29,841.67 in fees and $350 in costs); *EPIC v. DHS*, 892 F. Supp. 2d 28

(D.D.C. 2012) (finding that EPIC was entitled and eligible to recover attorney fees and

costs); *EPIC v. DHS*, 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (awarding $21,482 in fees

and costs).

Most recently in, *EPIC v. FBI*, No. 13-442, 2014 WL 5713859, (D.D.C. Nov. 5,

2014), a fee dispute with the government, EPIC sought a total award of $22,124 for fees

in a FOIA case in which it substantially prevailed. The FBI responded "that EPIC's

request for fees should be denied entirely or substantially reduced. The FBI concedes that

EPIC is entitled to costs of $350.00 for filing the Complaint." *Id.* at 4. Following a

detailed review of the parties' briefs, the affidavits provided by EPIC, and the billing

records provided by EPIC, the Court awarded EPIC $20,273, almost the entire amount

EPIC requested. *Id*. at 12. Among other determinations, the Court rejected "the FBI's

arguments to reduce the time EPIC's counsel spent drafting, reviewing, discussing, and

filing the Complaint." *Id*. at 8.

---

[1] The award was reduced primarily because the court found that EPIC had only
substantially prevailed on 1/7 of the issues at summary judgment. *Id.* at 63. The court also
reduced the award due to two billing errors: (1) conferences related to the combined cases
were billed in both matters, and (2) one of EPIC's attorneys was billed at the wrong
*Laffey* rate. *Id.* at 63-64.

Counsel's allegations are not only baseless, they are refuted by three recent

opinions in this Circuit ruling directly on EPIC's petitions for fees

## II. EPIC is Entitled to Recover Fees and Costs Under the Four-Factor Test

Contrary to the NSA's assertion, the four-factor test employed by the D.C. Circuit

to determine entitlement to recover fees clearly weighs in EPIC's favor. *See Davy v. CIA*,

456 F.3d 162, 163 (D.C. Cir. 2006) [hereinafter *Davy I*]*; see also Morley v. CIA*, 719

F.3d 689, 690 (D.C. Cir. 2013) (reaffirming the four-factor test outlined in *Davy I*). The

NSA argues that two of the four factors do not favor EPIC: the reasonableness of the

agency's withholding of the requested documents and the "public benefit" derived from

the case. However, the NSA's objections are contrary to *Davy I* and *Morley* and have no

basis in fact. The agency's withholding was unreasonable and the public clearly benefited

from the release of NSPD-54. The NSA also presents a cursory and unpersuasive

response to EPIC's argument that the second and third factors—the "commercial benefit"

to the plaintiff and the "nature of the plaintiff's interest"— which clearly favor EPIC.

### A. The NSA's Had No Colorable Legal Basis for Withholding NSPD-54, and Its Withholding Was Not Correct As A Matter of Law

The NSA's view of the fourth entitlement factor is incorrect. The fourth factor is

only dispositive when the agency's withholding was "correct as a matter of law." *Davy v.*

*CIA*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) [hereinafter *Davy II*]. "If the Government's

position is founded on a colorable basis in law, that will be weighed along with other

relevant considerations in the entitlement calculus." *Id*. (quoting *Chesapeake Bay Found.,*

*Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993)).

The NSA argues that "its withholding of NSPD 54 was correct as a matter of law"

because, as the agency claims, the Court on summary judgment "rejected [EPIC's]

arguments and upheld the withholding of NSPD-54." Def.'s Opp. at 11. The agency's argument is wrong because (1) the Court never ruled that the agency's reason for withholding was "correct as a matter of law," the Court ruled on grounds the agency never argued; and (2) the Court's decision itself was vacated. The agency also argues that it had a colorable basis in law to withhold NSPD-54, and therefore that the fourth factor should weigh in its favor. But the agency has failed to distinguish its Exemption 5 claim from the nearly identical one rejected by a court last year.

This Court did not uphold the NSA's claim for withholding NSPD-54, which focused almost entirely on the application of Exemption 5 to the records sought by EPIC. Instead, the Court ruled that NSPD-54 was not an "agency record" and therefore not subject to the FOIA. Mem. Op. at 14-15. This was not the NSA's basis of withholding the record – it was never argued by either party – and when the Court gave the agency an opportunity to argue that NSPD-54 was not an agency record, the agency declined. Joint Status Report, ECF No. 26; *see also* Mem. Op. at 7-8 ("The parties have focused their attention on whether the withholding of records responsive to the plaintiff's request under exemptions to the FOIA was proper, but such exemptions are irrelevant if the records requested are not 'agency records' within the meaning of the FOIA.").

Moreover, the D.C. Circuit vacated the Court's order. Order of the USCA, ECF No. 38. The NSA also produced the document to EPIC, which demonstrates that the agency did in fact have "control" over the document and that therefore is an agency record subject to the FOIA. *See* Mem. Op. at 9 (citing *Judicial Watch v. U.S. Secret Serv.*, 726 F.3d 208, 224 (D.C. Cir. 2013) (holding that an agency has "control" over a record when it has the "ability to use or dispose of the record as it sees fit")). In brief, the Court

never addressed the basis of the agency's withholding, the Court never determined the agency's position was "correct as a matter of law," the Court's order that permitted withholding was subsequently vacated, and the agency eventually disclosed the document sought by EPIC. For any one of these reasons, the fourth prong of the entitlement test weighs in favor of EPIC.

The NSA has also incorrectly interpreted the four-factor test. The fourth factor inquiry is dispositive only if the "Government's position" is correct as a matter of law, and only weighs in the government's favor if the agency had a colorable legal basis for withholding. *Davy v. CIA*, 550 F.3d at 1162. The proper focus of the test, therefore, is on the legal theory put forward by the agency for withholding the document—in this case, Exemption 5 and the presidential communications privilege. *See* Mem. Op. at 4. An agency's "reasonable basis" for withholding should be evaluated based on the agency's proposed theory. *See, e.g.*, *Dorsen v. SEC*, 15 F. Supp. 3d 112, 125 (D.D.C. 2014) (finding that the agency's Exemption 5 basis for withholding a civil complaint was reasonable); *Brayton v. USTR*, 641 F.3d 521, 524 (D.C. Cir. 2011) (concluding that the agency had a reasonable basis to withhold an international trade agreement under Exemption 1). In this case, the Court made no determination as to the NSA's theory that NSPD-54 was properly withheld as a privileged presidential communication under Exemption 5. Mem. Op. at 18 n.11. At the time the agency filed a motion for summary judgment, no court had considered the agency's theory. Since then, at least one court has ruled that a Presidential Directive is not properly subject to Exemption 5 and the Presidential Communications Privilege. *Ctr. for Effective Gov't v. U.S. Dep't of State*, 7

F. Supp. 3d 16 (D.D.C. 2013). Therefore, the NSA cannot claim it had a colorable basis for withholding and the fourth factor favors EPIC.

The NSA also argues that awarding fees in this case would penalize the agency for "choos[ing] to relent for the sake of transparency and release requested documents without exposing themselves to monetary penalties." Def.'s Opp'n at 11 (citing *Dorsen*, 15 F. Supp. 3d at 124-25). The NSA cites *Dorsen* and *Brayton* to support the proposition that agencies "with legal authority to withhold requested documents" should not face the disincentive of paying attorneys' fees for voluntarily disclosing those documents. Def.'s Opp'n at 11-12. But the government's theory turns one factor in the four-part entitlement determination into the *sine qua non* of the fee awards. Neither *Davy* nor *Morley* suggest such an outcome. In fact, the Court has routinely affirmed the need to weigh all four factors in the fee determination. More to the point, the statutory fee provision in the FOIA was adopted to ensure that petitioners such as EPIC are able to obtain reasonable fees in those matters where they substantially prevail. The agency's argument that it should not be required to pay attorney fees and costs where a plaintiff obtains relief as a direct result of bringing a FOIA suit would quickly eviscerate the fee provision.

**B. The NSA Incorrectly Characterizes the Public Benefit Factor**

The "public benefit" factor ensures that dissemination of the information requested is in the public interest. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 230 (D.D.C. 2011). As the NSA has conceded that "[t]he public-benefit prong speaks for an award of [attorney's fees] where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (internal citations omitted).  However, the NSA mischaracterizes the Court's analysis in that case. In *Cotton*, the lower court had ruled

that the "public benefit" factor of the entitlement analysis was satisfied because the requester had received records from the Smithsonian Institute, thereby establishing the Smithsonian as an agency subject to the FOIA. The D.C. Circuit overturned this decision, finding that "[t]he court did not evaluate the value of the particular documents released, but focused solely on the precedential value of its holding." *Id. at* 1120. The documents at issue in *Cotton* were two records related to a former employee's discrimination lawsuit, which she did not publish or distribute to the public. As the Court explained, "no evidence exists that the release of the two non-exempt documents will contribute to the public's ability to make vital political choices. Plaintiff does not even argue this point." *Id*. This analysis hardly applies in this case where EPIC obtained the Presidential Directive outlining the government's cyber security strategy. The NSA's reliance on *Cotton* in this case is misplaced.

The NSA also mistakenly focuses on the amount of media coverage to argue that the public has not benefitted from the release of NSPD-54. Def. Opp'n at 12-13. The agency's argument is wrong for two reasons. First, limiting the inquiry to media coverage "focuses the public benefit factor too narrowly." *EPIC v. FBI*, ___F. Supp. 3d___, 2014 WL 5713859, at *5 (D.D.C. Nov. 5, 2014). In *EPIC v. FBI*, the FBI argued that EPIC's request for records concerning a large-scale biometric database did not benefit the public because media coverage was limited. The court rejected the government's argument and found that "the relevant inquiry is whether EPIC's success 'is *likely* to add to the fund of public information that citizens may use in making vital political choices.'" *Id.* (quoting *Cotton*, 63 F.3d at 69. *See also Morley v. CIA*, 719 F.3d 689, 690 (quoting *Davy*, 550 F.3d at 1162 n. 3 for the proposition that "[i]t would also be inconsistent with

congressional intent to disqualify plaintiffs who obtain information that, while arguably not of immediate public interest, nevertheless enables further research ultimately of great value and interest")). Here, even if the Court agrees with the agency's characterization of the media coverage of NSPD-54, it is clear that as a result of EPIC's litigation the administration's cybersecurity policy is now subject to public scrutiny, and the American public can more meaningfully comment on future legislation and government action regarding cybersecurity.

Second, the NSA does not contest the impact of EPIC's broad dissemination of NSPD-54 to the public from its website and through its online newsletter. The EPIC Alert is a publication that has enjoyed a readership of thousands for more than twenty years. EPIC has also published all of the documents in this case on the various webpages devoted to this case and to the broader topic of Presidential authority and cybersecurity.[2] News items such as these are also routinely available on the homepage of the web sites that EPIC manages. *See, e.g., EPIC Pursues Information About "Hemisphere," Massive Phone Record Database*, EPIC (Dec. 3, 2014).[3] The EPIC websites, www.epic.org and privacy.org, remain two of the most highly ranked web sites in the world for a search on the term "privacy."

### C. The Second and Third Entitlement Factors Clearly Favor EPIC

The NSA's final argument against entitlement is similarly unavailing. The agency correctly observes, "this Court has stated previously that 'the commercial benefit and

---

[2] *EPIC v. NSA: NPSD-54 Appeal (On the Applicability of the FOIA to a Presidential Directive Issued to the NSA)*, https://epic.org/foia/nsa/nspd-54/appeal/; *EPIC v. NSA - Cybersecurity Authority*, https://epic.org/foia/nsa/nspd-54/default.html; *Presidential Directives and Cybersecurity*, https://epic.org/privacy/cybersecurity/presidential-directives/cybersecurity.html.

[3] https://epic.org/2014/12/epic-pursues-information-about.html.

nature of interests elements' of the entitlement inquiry 'weigh in favor of EPIC.'" Def.'s Opp'n at 13 (quoting *EPIC v. DHS*, 811 F. Supp. 2d at 235 (internal citations omitted)). But the NSA goes on to argue that the Court should not reach the same conclusion in this case because "it is worth noting" that EPIC, a not-for-profit research center, solicits donations on its webpage. The agency's argument is incorrect as a matter of law.

"FOIA suits which are motivated by scholarly, journalistic, or public interest concerns are the proper recipients of fee awards." *Tax Analysts v. DOJ,* 759 F.Supp. 28, 30 (D.D.C. 1991), *aff'd*, 965 F.2d 1092 (1992). And even if "some private benefit accrued to EPIC by means of their success, 'Congress did not intend for scholars (or journalists and public interest groups) to forgo compensation when acting within the scope of their professional roles.'" *EPIC v. DHS*, 999 F. Supp. 2d at 69 (quoting *Campbell, v. U.S. DOJ*, 164 F.3d 20, 35-36 (D.C. Cir. 1998)). As the D.C. Circuit explained:

> Surely every journalist or scholar may hope to earn a living plying his or her trade, but that alone cannot be sufficient to preclude an award of attorney's fees under FOIA. "If newspapers and television news shows had to show the absence of commercial interests before they could win attorney's fees in FOIA cases, very few, if any, would ever prevail."

*Davy II*, 550 F.3d at 1160 (quoting *Tax Analysts*, 965 F.2d at 1096).

The NSA does not contest EPIC's journalistic or public interest motivation in this case, nor does it claim that EPIC's actions fall outside the organization's professional role. The fact that EPIC obtains charitable contributions in furtherance of its public education mission underscores EPIC's commitment to promote public dialogue. The second and third factors favor EPIC. *See EPIC v. FBI,* 2014 WL 5713859 at *5; *EPIC v.*

*DHS*, 999 F. Supp. 2d at 69; *EPIC v. DHS*, 811 F. Supp. 2d at 235. The Court should reach the same conclusion in this case.

## III. EPIC'S REQUEST FOR FEES AND COSTS IS REASONABLE

There is no dispute that "[a]ttorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *CREW v. FEC*, ___ F. Supp. 2d. ___, 2014 WL 4380292 at *9 (D.D.C. Sept. 5, 2014) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1984)). In particular, courts have found that it is important for fee requestors to provide detailed records that allow both opposing counsel and the court to make "an informed determination as to the merits of the application." *EPIC v. DHS*, 999 F. Supp. 2d 61, 73 (D.D.C. 2013) (quoting *CREW v. DOJ*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011)). Courts also typically require that attorneys track their time in tenth-hour increments, though courts have awarded fees even where attorneys do not satisfy this requirement. *See Blackman v. D.C.*, 59 F. Supp. 2d 37, 44 (D.D.C. 1999).

### A. EPIC's Affidavits and Billing Records Satisfy the Contemporaneousness Requirements

The NSA's argument that the billing records EPIC submitted are not sufficient to satisfy the contemporaneousness requirements in the D.C. Circuit is wrong as a matter of fact and as a matter of law.

The NSA's argument that EPIC's billing record are not "contemporaneous" because they "summarize the work [EPIC's] various attorneys conducted across many months (and several years)," Def.'s Opp. at 15, is based on the same mistaken interpretation that was rejected in *Cobell v. Norton*, 407 F. Supp. 2d 140, 154 (D.D.C.

2005) ("[D]efendants' objections to [the] practice of transferring records from one medium to another and clarifying records to facilitate judicial review" is "meritless."). As the court found:

> [D]efendants' interpretation of the "contemporaneous time records" requirement is draconian. A time record is "contemporaneous" if its descriptions are both "accurate and current," and includes "for each attorney, the date, the hours expended, and the nature of the work done."

*Cobell*, 407 F. Supp. 2d at 155 (citations omitted). The court found that "[w]hat is significant is that plaintiffs' time entries do not constitute 'casual after-the-fact estimates.'" *Id.* (quoting *In re Hudson & Manhattan R.R. Co.*, 339 F.2d 114, 115 (2d Cir. 1964)).

EPIC has clearly satisfied the contemporaneousness standard because its billing records are compiled from detailed, contemporaneous time records kept by EPIC attorneys and entered into EPIC's billing database. Butler Decl. ¶¶ 3-5. Courts in this Circuit have upheld similar billing records in EPIC's other cases. *See, e.g.*, *EPIC v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013) (awarding $29,841.67 in fees and $350 in costs); *EPIC v. DHS*, 982 F. Supp. 2d 56, 64 (D.D.C. 2013) (awarding $3,321.95 in fees and costs); *EPIC v. DHS*, 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (awarding $21,482 in fees and costs). The NSA's reliance on the 2011 *CREW* case is misplaced and its description of that case is misleading. The *CREW* decision does not support the agency's conclusion that attorneys must submit their timesheets in order to satisfy this Circuit's fee requirements. Each entry in EPIC's billing record "includes one activity completed on one specific date" and is sufficiently detailed. *See CREW v. FEC*, ___ F. Supp. 2d ___, 2014 WL 4380292 at *9 (D.D.C. Sept. 5, 2014). The billing record itself was printed by EPIC's attorney from EPIC's database of contemporaneous and detailed billing records.

Butler Decl. ¶¶ 3-5. The entries in this database are copies of contemporaneous time sheets and time notes maintained by EPIC's attorneys. *Id.*

In *CREW*, the court considered a challenge to the plaintiff's attorney's "timekeeping practices," not to the format of the billing summary that the plaintiff submitted to the court. The court in *CREW* found the attorney timekeeping practices insufficient because the time sheets maintained by the attorneys included the "number of hours (and in some cases half-hour increments) . . . spent on specific cases, but d[id] not itemize the specific tasks [they] performed for each of those cases." *CREW*, 825 F. Supp. 2d at 230. The attorney then "reviewed the hours [she] spent on the case in coordination with the docket sheet, [her] case files, and periodic notes of daily activities [she] maintain[ed] on [her] calendar" in order to add detail to her contemporaneous records. *Id.* Importantly, the court in *CREW* did find that the plaintiff's satisfied the "contemporaneous" requirement, but the court reduced the fee award "to account for any inaccuracies and overbilling that may have occurred as a result of its unacceptable timekeeping habits." *Id.* The problem identified by the court in *CREW* was the failure to maintain detailed records and the attorney's efforts to reconstruct detailed records after-the-fact based on docket sheets and other external records.

The recent decision in *CREW v. FEC*, ___ F. Supp. 2d ___, 2014 WL 4380292 (D.D.C. Sept. 5, 2014), underscores the difference between the reconstructed time sheets in the 2011 *CREW* case and the type of comprehensive records provided in this case. In *CREW v. FEC*, the court distinguished the plaintiff's billing records and timekeeping practices from those at issue in *CREW v. DOJ* and adopted by Magistrate Judge's finding that the plaintiff's timesheets were contemporaneously prepared. *Id.* at *9. As the court

explained in *CREW v. FEC*, the problem with the records submitted in *CREW v. DOJ* was that the attorney's "declaration made it clear that she engaged in *post hoc* reconstruction of her hours based on a combination of her timesheets, notes, and the docket; no detailed contemporaneous records were kept, only aggregate tools, and even the reconstructed records conflated multiple days' worth of work." *Id.* In contrast, the court found that the declaration submitted in *CREW v. FEC* was sufficient where it stated that the attorney "reviewed [her] daily time sheets and separate notes [she] maintain[ed] on individual cases," and submitted an exhibit containing "a break-down of [her] time by day on specific litigation activities in this case at both the district court and court of appeals level." *Id*. In particular, the court found it significant that "unlike in the earlier cases cited by the FEC, each entry on CREW's timesheet includes one activity completed on one specific date." *Id*. That is precisely what EPIC has done in this case.

The billing exhibits EPIC submitted in this case include detailed, contemporaneous billing records for each attorney. Butler Decl. ¶¶ 3-5. These records have been reviewed for billing judgment purposes and edited to provide clarity and a standardized format to facilitate the Court's review. *Id.* ¶ 5. These records were not reconstructed after the fact, but were contemporaneously recorded by EPIC's attorneys prior to their entry into EPIC's billing database. Butler Decl. ¶¶ 3-5; Ex. 2, Sup. Aff. Alan Butler ¶ 8; Ex. 3, Sup. Aff. Marc Rotenberg ¶ 9; Ex. 4, Sup. Aff. T. John Tran ¶ 7. The NSA has not provided any reason to doubt the contemporaneousness of these records, and its arguments to the contrary are based on misstatements of law and fact.

### B. EPIC Properly Calculated the *Laffey* Rates for Its Attorneys

The case billing record in this matter contains detailed, contemporaneous time entries along with a calculation of the lodestar rate for each individual entry based on the

applicable rate for each attorney in the *Laffey* Matrix. Butler Decl. ¶¶ 3-5. For public interest lawyers, "courts in this circuit have frequently employed the '*Laffey* Matrix,' a schedule of fees based on years of attorney experience." As the most current version of the *Laffey* Matrix makes clear, the "various 'brackets' in the column 'Experience' refer to the years following the attorney's graduation from law school, and are intended to correspond to 'junior associates' (1-3 years after law school graduation), 'senior associates' (4-7 years), 'experienced federal court litigators' (8-10 and 11-19 years), and 'very experienced federal court litigators' (20 years or more)." Pl.'s Mot., Ex. 12. The current *Laffey* Matrix also clarifies that the 'junior associate' rate applies to all attorneys who are licensed to practice and are "in their first, second, and third years after graduation from law school, and the '4-7 years' bracket generally becomes applicable on the third anniversary of the attorney's graduation (*i.e.*, at the beginning of the fourth year following law school)." *Id.*

Accordingly, the *Laffey* rates for Ms. McCall, Mr. Butler, Ms. Horwitz, and Mr. Husband[4] were properly calculated based on their years of experience since law school. In fact, the NSA does not argue that the *Laffey* rates used to calculate EPIC's lodestar rate were incorrect. The NSA has only argued that EPIC's attorneys might not have been licensed to practice law at the times they worked on this matter. That is a factually incorrect and frivolous argument, and the government could have easily determined this with a simple search on the Court's website.

---

[4] The NSA apparently concedes that Ms. Stepanovich was licensed to practice at the time she worked on EPIC's Cross Motion for Summary Judgment and Reply, but EPIC can provide additional records as necessary to confirm that she has been licensed to practice law since January 2011.

All attorneys are currently licensed to practice law, and have been licensed to practice during the entire period where they billed on this matter. Butler Decl. ¶ 7.[5] Ms. McCall has been licensed to practice law since November 25, 2009, and has been admitted to practice before this Court since July 11, 2011. *Id*. Mr. Butler has been licensed to practice law since December 15, 2011, and has been admitted to practice before this Court since May 4, 2013. *Id*. Ms. Horwitz has been licensed to practice law since December 12, 2012, and has been admitted to practice before this Court since May 5, 2014. *Id*. Mr. Husband has been licensed to practice law since October 31, 2013. *Id*.

### C. There Are No Anomalies in EPIC's Detailed, Contemporaneous Billing Records

The Court should reject the NSA's objection to fees relating to a conference call with the agency in June 5, 2014 and two conferences the same month. Regarding the conference call, the agency argues that fees for a 0.3 hour phone call in which three EPIC attorneys were present was "unnecessary," but fails to explain why. Def.'s Opp'n 22. Under the NSA's reasoning, the Court would deny fees in every instance in which multiple attorneys participate in a single phone call. This Court held that the decision to bill for internal conferences involving multiple attorneys was reasonably within EPIC's billing judgment and "not such a departure from the norm as to rebut the presumption of reasonableness . . . ." *EPIC v. DHS*, 999 F. Supp. 2d at 74. Moreover, the approximately 15-minute phone conference on June 5, 2014 for which EPIC billed, concerned the decision of the agency to release NSPD-54, the central reason for the litigation of this matter.

---

[5] Ms. McCall, Mr. Butler, and Ms. Horwitz are all licensed to practice before this court. Butler Decl. ¶ 7. Mr. Husband is not currently licensed to practice before this Court, but his research work on the appellate brief in this case under the supervision of Mr. Rotenberg, Ms. McCall, and Mr. Butler.

With respect to the June 6, 2014 and June 9, 2014 conferences, Mr. Rotenberg conferred with EPIC attorneys directly assigned to this case to discuss the ramifications of the agency's decision to release of NSPD-54. In exercising billing judgment, EPIC only seeks fees for Mr. Rotenberg's time. And because EPIC is billing only for Mr. Rotenberg's time, and the bill sufficiently describes Mr. Rotenberg's work for which fees are claimed, these entries are not "excessively vague."

### D. Fees on Fees Should Not be Discounted

The NSA's argument that EPIC's claim for fees on fees should be discounted is incorrect as a matter of law and fact. An attorney is charged with exercising billing judgment when charging for services. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 323 (D.D.C. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). An attorney may also modify entries prior to final submission in order to clarify for the Court what task is being billed. *Cobell*, 407 F. Supp. 2d at 154-55.

The NSA's objection centers on the argument that draft bills sent during confidential settlement negotiations contain entries that were not submitted in the final bill. The reason for this is plain: EPIC exercised billing judgment and clarified descriptions of tasks to assist the Court in understanding the bill. Butler Decl. ¶ 6. From September 5, 2014 to September 10, 2014, EPIC law clerk John Tran spent a total of 30.6 hours researching the law governing attorneys' fees and as well as Federal Rule of Civil Procedure 68. Butler Decl. ¶ 5. But in preparing the final bill, EPIC's attorneys exercised billing judgment and sought only 12 hours for work done by Mr. Tran. *Id.* EPIC also edited the final bill, consistent with its attorneys contemporaneous billing records, to provide the Court with a clear and concise description of each task billed. Butler Decl. ¶¶ 3-5. Moreover, the NSA indicates that it objects to fees for "[EPIC's] research into this

non-issue." Def.'s Opp'n 23. Yet, the agency fails to expand on this objection. Mr. Tran's

research on Rule 68 is far from a "non-issue." Based on Mr. Tran's research, EPIC

concluded that it had a valid claim for fees for time EPIC attorneys spent litigating the

agency's withholding of NSPD-54 prior to the Rule 68 Offer because of this Court's

ruling that it lacked jurisdiction over NSPD-54 and because EPIC was neither entitled nor

eligible for fees related to NSPD-54 as of the date of the Judgment. Mr. Tran's hours

were therefore "reasonably devoted to a request for fees" and are compensable. *EPIC v.*

*DHS*, 999 F. Supp. 2d 61, 70 (D.D.C. 2013).

The NSA also argues that EPIC's fee negotiation communications should not be

compensable because the agency alleges that these communications were not "reasonably

calculated to be productive." Def.'s Opp. at 24. This argument is based on an inaccurate

and incomplete description of the negotiation history in this case, and should be rejected

accordingly. Mr. Rotenberg billed only 1.2 hours for time spent communicating with

opposing counsel over five weeks. Even though counsel for the NSA rarely bothered to

return emails or voicemails, Mr. Rotenberg made a reasonable, good faith offer to settle

this mater prior to the deadline set by this Court.[6] The time Mr. Rotenberg spent

---

[6] The government's discussion of "key milestones," Def.'s Opp. at 5, excludes the fact
that the agency failed to respond to multiple messages from EPIC's attorney over the
several weeks prior to a Court-ordered deadline. After repeated attempts to contact
opposing counsel over several weeks, EPIC received a response on October 2nd, with
only 48 hours until a pending Court deadline, invariably ensuring that no result could be
obtained. The e-mail from opposing counsel acknowledged EPIC's repeated requests for
a response ("thank you for the e-mails, and your patience. . ."), but nevertheless gave
EPIC less than 48 hours to consider the Offer of Judgment. Counsel for EPIC did nothing
more than to try to achieve a timely response from the agency prior to this Court's
deadline to conclude fee negotiations, the only remaining issue in this matter. Of course,
neither this statement nor the selective statements of counsel for the agency should
properly be placed before the Court. This is simply one more example of the shenanigans
in which the agency has engaged.

communicating with opposing counsel was "reasonably devoted to a request for fees" and

are compensable. *EPIC v. DHS*, 999 F. Supp. 2d 61, 70 (D.D.C. 2013). The agency's

obdurate behavior in this case made it impossible to resolve the fee dispute through

settlement.

## IV. THE NSA'S REFERENCES TO CONFIDENTIAL SETTLEMENT DOCUMENTS VIOLATE FEDERAL RULE OF EVIDENCE 408

EPIC objects to the NSA's inclusion of confidential settlement documents in

violation of the Federal Rules of Evidence. The NSA has attached to the opposition draft

billing documents that were submitted to the agency by EPIC during confidential

settlement negotiations. Pursuant to Federal Rule of Evidence 408 the Court should

exercise its inherent authority to strike these exhibits from the record along with all of

NSA's references to them in their opposition.

Federal Rule of Evidence 408 provides that:

Evidence of the following is not admissible – on behalf of any party –
either to prove or disprove the validity or amount of a disputed claim[:]. . .
conduct or a statement made during compromise negotiations about the
claim[:]

Fed. R. Evid. 408(a). *See United States v. Davis*, 596 F.3d 852, 861 (D.C. Cir. 2010)

(finding that a district court abused its discretion when it permitted the government to

testify about a criminal defendant's offer of settlement and the statements that followed).

In this case, the NSA is clearly submitting these documents to contest the "validity or

amount" of EPIC's fee claim, which is precisely what Rule 408 prohibits. *Davis*, 596

F.3d at 859. The purpose of this Rule is to promote settlements, and it bars the

introduction of evidence of settlement offers or statements made during compromise

negotiations, even if no settlement is reached. *Id*. The NSA violated this clear prohibition

of the Federal Rules of Evidence, and therefore the exhibits it submitted with its

Memorandum in Opposition should be stricken from the record.

## **CONCLUSION**

EPIC is eligible for and entitled to recover its fees and costs from the NSA in this

matter. EPIC's fees are reasonable and supported by the proper documentation. The

Court should award EPIC a total of $68,354.01 in fees and $730.28 in costs, including

$9,786 in fees on fees for time spent preparing this Reply, as documented in the Exhibits

attached to EPIC's Motion for Fees and the Exhibits attached to this Motion.


Respectfully submitted,

MARC ROTENBERG
EPIC Executive Director

GINGER MCCALL
Director, EPIC Open Government Project

__/s/ Alan Butler_____
ALAN JAY BUTLER
Senior Counsel
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*


Dated: December 8, 2014