UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>NATIONAL SECURITY AGENCY,<br><br>　　　　　　Defendant. | Civil Action No. 10-196 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

Pending before the Court is the plaintiff's Motion for Attorneys' Fees and Costs ("Pl.'s Mot."), ECF No. 44.  The plaintiff, the Electronic Privacy Information Center ("EPIC"), seeks attorneys' fees as a prevailing party pursuant to the Freedom of Information Act ("FOIA").  5 U.S.C. § 552(a)(4)(E).  The defendant, the National Security Agency ("NSA"), challenges the plaintiff's entitlement to attorneys' fees and, in the alternative, challenges the reasonableness of the amount requested by the plaintiff, seeking a reduction in fees as a sanction.  *See* Def.'s Opp'n to Pl.'s Mot. for Attys. Fees and Costs ("Def.'s Opp'n") at 5, ECF No. 45.  For the reasons set forth below, the plaintiff's motion is granted in part and denied in part.

**I.　BACKGROUND**

The facts of this case have been set forth in this Court's prior Memorandum Opinion and do not need to be repeated here.  *See EPIC v. NSA* (*EPIC I*), 988 F. Supp. 2d 1, 4–7 (D.D.C. 2013).  In *EPIC I*, this Court held that a partially classified document requested by the plaintiff under the FOIA, National Presidential Security Directive ("NPSD") 54, which sets forth the U.S. Government's cybersecurity polices, was not an "agency record" within the meaning of FOIA

and, therefore, the Court granted summary judgment to the defendant regarding the withholding in full of NSPD 54. *See id.* at 12.

The plaintiff timely appealed that decision in December 2013. Notice of Appeal at 1, ECF No. 32. While the appeal was pending, on January 27, 2014, the plaintiff "accepted a Rule 68 Offer of Judgment for $3,500 from the [defendant]." Pl.'s Mot. at 4. The Offer of Judgment reads as follows, in pertinent part:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendant National Security Agency hereby offers to allow judgment to be taken against it, in the amount of $3,500.00, in full resolution of all claims of Plaintiff Electronic Privacy Information Center for all costs, including attorney's fees, incurred in this action. This offered amount includes all costs accrued, including all attorney's fees and all fees on fees.

Def.'s Offer of Judgment, Jan. 27, 2014 (the "January Judgment")[1] at 1, ECF No. 36-1. The plaintiff accepted the Offer of Judgment on February 9, 2014, Def.'s Notice of Acceptance of Offer of Judgment at 1, ECF No. 36, and the judgment with the above language was entered by the Clerk of Court on February 11, 2014.

Despite the offer and acceptance of judgment, the plaintiff's appeal continued in the D.C. Circuit, with the plaintiff filing its initial appellant brief in March 2014. Def.'s Opp'n at 4. That appeal effectively ended on June 5, 2014, when the defendant released "an unclassified version of NSPD 54" to the plaintiff. *Id.* Four days later, the parties filed a joint motion to vacate the portion of *NSC I* holding that NSPD 54 was not an agency record, which motion was subsequently granted by the D.C. Circuit. Pl.'s Mot. at 4–5.

---

[1] Although the defendant refers to the January Judgment as the "February Judgment," *see, e.g.*, Def.'s Opp'n at 8, the Offer of Judgment dated January 27, 2014 will be referred to as the "January Judgment" throughout this Memorandum Opinion, since the January Judgment encompasses all fees and costs accrued as of January 27, 2014.

Following vacatur, the plaintiff filed the pending motion, seeking $68,354.01 in attorneys' fees and $730.28 in costs.  Pl.'s Reply Def.'s Opp'n Pl.'s Mot. ("Pl.'s Reply") at 22, ECF No. 46 (including $9,786 in "fees on fees for time spent preparing [the plaintiff's] Reply").

## II.   LEGAL STANDARD

### A.   Settlement Agreements

The D.C. Circuit interprets settlement agreements under the local law of the jurisdiction where the settlement agreement is to be enforced.  *See Makins v. District of Columbia*, 277 F.3d 544, 548 (D.C. Cir. 2002) ("[W]e adopt local law in determining whether a settlement agreement should be enforced.").  The District of Columbia treats settlement agreements as contracts.  *See Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 188 (D.C. 2009) ("[S]ettlement agreements are construed under general principles of contract law.  Accordingly, we enforce a valid and binding settlement agreement just like any other contract.") (internal quotation marks and citations omitted); *see also Pub. Emps. for Envtl. Responsibility v. U.S. EPA*, 926 F. Supp. 2d 48, 54 (D.D.C. 2013) (finding that a FOIA plaintiff was precluded from filing more FOIA requests because "[a] settlement agreement is a contract, and [plaintiff] is bound by the contract he signed").  District of Columbia contract law is an "objective law of contracts, meaning that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake." *Abdelrhman v. Ackerman*, 76 A.3d 883, 888 (D.C. 2013) (internal quotation marks and citations omitted; brackets in the original).

### B.   FOIA Fee Awards

The FOIA authorizes the award of attorneys' fees reasonably incurred by a plaintiff who is in litigation to obtain "the production of any agency records improperly withheld," 5 U.S.C. §

3

552(a)(4)(B), when "the complainant has substantially prevailed," *id*. at § 552(a)(4)(E)(i). The D.C. Circuit has construed this statutory provision as "naturally divid[ing] the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement.'" *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). Thus, to obtain attorneys' fees under the FOIA, the plaintiff must demonstrate both eligibility and entitlement to the award. *See McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014); *see also Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984) ("[E]ligibility alone is not enough. . . . the complainant must [also] show that he or she is 'entitled' to an award.").

   1.   *Eligibility For Fees Award*

To satisfy the first requirement of eligibility for attorneys' fees, a claimant must show that he "substantially prevailed" in the underlying FOIA litigation. *See* 5 U.S.C. § 552(a)(4)(E)(i). The statute provides that the claimant "substantially prevail[ed]" by gaining relief from either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. at § 552(a)(4)(E)(ii).[2] This statutory text is a direct Congressional response to

---

[2] The term "not insubstantial," which was added as part of the FOIA amendments in the OPEN Government Act of 2007, is not defined in the statute. *See* Pub. L. No. 110-175, 121 Stat. 2524 (codified at 5 U.S.C. § 552 (Supp. III 2009)) [hereinafter 2007 Act]. The House-passed version of these FOIA amendments did not use this term and, instead, provided that a claimant qualified for attorneys' fees upon a "voluntary or unilateral change in position by the opposing party, in a case in which the complainant's claim or defense was not frivolous." H.R. Rep. No. 110-45, at 15 (2007) (Report by House Committee on Oversight and Government Reform). The Senate-passed version of the bill, which was ultimately enacted as the 2007 Act, adopted the current language, 153 CONG. REC. S15702 (2007), which the lead sponsor of the legislation, Senator Patrick Leahy, explained "would not allow the requester to recover attorneys' fees if the requester's claim is wholly insubstantial," *Id.* at S15704 (statement of Sen. Leahy). Inquiry as to whether the claim is "not insubstantial" is "properly considered under the entitlement prong of the fee analysis, not the eligibility prong." *Judicial Watch, Inc. v. U.S. Dep't of Justice,* 878 F. Supp. 2d 225, 233 (D.D.C. 2012) (citing *Brayton*, 641 F.3d at 526).

4

the D.C. Circuit's rejection of the "catalyst theory"[3] in determining whether FOIA plaintiffs were eligible for attorneys' fees when an agency voluntarily turned over the records sought. *See Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010). After the Supreme Court's landmark case of *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), which largely invalidated the catalyst theory, the D.C. Circuit held that "a FOIA plaintiff has 'substantially prevailed' only if he has 'been awarded some relief by [a] court, either in a judgment on the merits or in a court-ordered consent decree.'" *Davis*, 610 F.3d at 752 (quoting *Oil, Chem. & Atomic Workers Int'l Union v. U.S. Dep't of Energy*, 288 F.3d 452, 456–57 (D.C. Cir. 2002)).

In the FOIA context, Congress restored the catalyst theory with the OPEN Government Act of 2007 (the "2007 Act"), which inserted the present text of 5 U.S.C. 552(a)(4)(E)(ii). *Id.* After the 2007 Act took effect, FOIA applicants were once again eligible for attorneys' fees, even if they did not obtain a court order granting the relief sought, so long as the claim was "not insubstantial." *Id.* Thus, whether the parties' legal relationship changed, the *sine qua non* of attorneys' fees eligibility in most other contexts, is not as significant in FOIA fee disputes. *See id.*

### 2. *Entitlement To Fees Award*

If the plaintiff has "substantially prevailed and thus may receive fees . . . the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Brayton*, 641 F.3d at 524 (emphasis in original) (quotation marks and citations omitted). "This circuit has long applied a multi-factor standard" involving

---

[3] Under the catalyst theory, a party is a prevailing party eligible for attorneys' fees if the party's actions were a cause of the relief sought. *See Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010). This situation often arose in FOIA cases where an agency "voluntarily" released records after a lawsuit was filed but before judicial relief was granted. *See id.*

consideration of "[f]our non-exclusive factors:" "'(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding' of the requested documents." *McKinley*, 739 F.3d at 711 (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)), *superseded by statute*, 5 U.S.C. § 552(a)(4)(E)(i), *as recognized in Summers v. U.S. Dep't of Justice*, 569 F.3d 500, 502 (D.C. Cir. 2009)); *see also Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995).

In *Davy v. CIA*, the D.C. Circuit noted that "no one factor is dispositive," but this statement comes with the significant caveat that "if the Government's position is correct as a matter of law, that will be dispositive." 550 F.3d 1155, 1159, 1162 (D.C. Cir. 2008). "The sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts*, 965 F.2d at 1094 (citing *Church of Scientology v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981)); *see also Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008) ("Balancing these factors is a matter for the district court.").

This four-factor entitlement test is not reflected in the text of the FOIA. *See* 5 U.S.C. § 552. For this and other reasons, Judge Kavanaugh has stated bluntly that the D.C. Circuit "should ditch the four-factor standard." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013) (Kavanaugh, J. concurring). Relying in part on Judge Randolph's dissent in *Davy*, Judge Kavanaugh noted that "the four factors have no basis in the statutory text" and, indeed, "Congress's decision not to include the four factors in the statutory text appears to have been deliberate." *Id.* Moreover, Judge Kavanaugh described the first three factors as "incompatib[le] with the FOIA's structure and purposes" and "so vague and malleable that they provide very little guidance to district courts." *Id.* at 691–92.

Regardless of the wisdom in Judge Kavanaugh's suggestion that the D.C. Circuit "should jettison the four-factor standard and adopt" a rule that "prevailing plaintiffs should receive attorney's fees—with only a very narrow exception for 'special circumstances' such as bad faith by a prevailing plaintiff," *id.* at 692 (citing *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968)), this Court is bound by *Davy* and its progeny, and must apply the four-factor test.

### 3. *Computation Of Fee Award*

Determining the reasonable attorneys' fees to which a prevailing party is entitled entails a three-part analysis: "(1) determination of the number of hours reasonably expanded [sic] in litigation; (2) determination of a reasonable hourly rate or 'lodestar'; and (3) the use of multipliers as merited." *Save Our Cumberland Mountains, Inc. v. Hodel* (*SOCM*), 857 F.2d 1516, 1517 (D.C. Cir. 1988) (citation omitted).  The fee applicant bears the burden of justifying the attorneys' fees requested.  *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) ("a fee applicant bears the burden of establishing an entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates") (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  The party seeking fees must submit evidence regarding "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community."  *Id.*  Upon submission of such information, a presumption applies that the number of hours billed and the hourly rates are reasonable.  *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 100–01 (D.D.C. 2010) (citing *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010)).  The burden then shifts to the defendant to "provide specific contrary evidence tending to show that a lower rate would be appropriate."  *Covington*, 57 F. 3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982) ("*Concerned Veterans*")).

7

## III.   DISCUSSION

The defendant contends that the plaintiff was not a prevailing party for the purposes of the FOIA and is therefore not entitled to attorneys' fees at all.  Def.'s Opp'n at 10–14.  In the alternative, the defendant argues that (1) the plaintiff is foreclosed from seeking additional fees for any period of time prior to the January Judgment; and (2) the plaintiff is not entitled to all of the fees it seeks for the period after the January Judgment.  Each argument is addressed in turn below.

### A.   The Plaintiff Is A "Prevailing Party" Eligible For Attorneys' Fees

The defendant contends that the plaintiff did not "substantially prevail" because "withholding [] NSPD 54 was correct as a matter of law," based on this Court's holding in *EPIC I*.  Def.'s Opp'n at 11.  The defendant is incorrect for two reasons.  First, the portion of *EPIC I* setting out the legal basis for the defendant's withholding of NSPD 54—i.e., that NSPD 54 was not an agency record subject to FOIA—was vacated at the joint request of the plaintiff and defendant.  *See* D.C. Cir. Order at 1, ECF No. 38.  Thus, the defendant's contention that "[t]his Court's legal determination that FOIA does not require the release of NSPD 54 stands," Def.'s Opp'n at 11, is incorrect: that determination has been vacated.  Second, even if the defendant were correct and *EPIC I* did show that the agency was correct to withhold NSPD 54 as a matter of law, such a finding would not affect the plaintiff's *eligibility* for a fee award; it would affect the plaintiff's *entitlement* for such an award.  *See Brayton*, 641 F.3d at 525–26.  The language of the statute is clear and reflects a generally practical consideration regarding whether a FOIA plaintiff obtained the relief it wanted, in the form of the release of the requested information: "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial," qualifies a FOIA plaintiff as a prevailing party eligible for attorneys' fees.  *See* 5 U.S.C. § 552(a)(4)(E)(ii)(II); *see also Petersen v. Gibson*, 372 F.3d 862, 865 (7th Cir. 2004)

(holding that courts "must examine the practical impact of the judgment" to determine prevailing party status). This is precisely the situation in which the plaintiff finds itself: following the plaintiff's appeal, the defendant voluntarily released NSPD 54 and agreed to request vacatur of the portion of this Court's opinion that found the defendant to have acted in accordance with the law. *See* Def.'s Opp'n at 11. Thus, the plaintiff is a prevailing party eligible for attorneys' fees. The defendant's arguments regarding the whether the agency was "correct as a matter of law" in withholding NSPD 54 is more properly addressed in the Court's review of the plaintiff's entitlement to fees. *See infra* Part III.C.

**B.     The January Judgment Forecloses All Fees Prior To January 27, 2014**

Although FOIA fees are generally governed by the four non-exclusive factors set forth in *Tax Analysts*, the plaintiff seeks $21,987.01 for fees and costs incurred in the pursuit of NSPD 54 on or before January 27, 2014, the date on which the defendant extended the Offer of Judgment that the plaintiff ultimately accepted. *See* Pl.'s Mot. Ex. 1 at 1–2, ECF No. 44-2 ("Bill of Fees and Costs" noting $15,777.01 in "District Court fees" not including "Fees on fees"); *id.* Ex. 3 at 1, ECF No. 44-4 ("D.C. Circuit Billing Records" noting $6,210.00 in fees on or before January 22, 2014). Therefore, the plaintiff's request for any fees and costs incurred prior to the January Judgment are more properly considered under District of Columbia contract law, as part of a legal settlement. *See Tsintolas Realty Co.*, 984 A.2d at 188.

The plaintiff contends that the fees it requests now—those pertaining to NSPD 54 and incurred before the January Judgment—should not be considered part of the January Judgment because "this Court had ruled that the request for NSPD-54 was not properly before the Court." Pl.'s Reply at 3. While the plaintiff adequately summarizes the Court's holding in *EPIC I* regarding NSPD 54, as previously noted, that portion of the opinion was vacated. *See* D.C. Circ. Order at 1; Pl.'s Reply at 3 (citing D.C. Circuit Order). Whether NSPD 54 was an "agency

9

record" for the purposes of FOIA was still "a live controversy" up to and until the defendant agency released the document. *See* D.C. Circuit Order at 1 ("As the agency has now released the document appellant sought, the appeal no longer presents a live controversy."). Thus, the plaintiff's contention that its litigation regarding the disclosure of NSPD 54 was "not properly before the Court" is incorrect as a matter of law. The fact that the Court concluded that this part of the plaintiff's suit was not subject to a FOIA request does not mean litigation did not occur or that there was no live controversy.

In any event, even if the claim were not "live" as of the January Judgment, the January Judgment made no delineation between costs for live and rejected claims. The January Judgment, offered pursuant to Federal Rule of Civil Procedure 68, allowed judgment to be taken against the defendant "in full resolution of all claims of" the plaintiff "for all costs, including attorney's fees, incurred in this action. This offered amount includes all costs accrued, including all attorney's fees and all fees on fees." Whether pertaining to a live claim or not, all costs and fees "incurred" by the plaintiff prior to January 27, 2014, including "all attorney's fees and all fees on fees," were expressly considered part of the January Judgment. Using the District of Columbia's objective method of reading contracts, where the Court looks to the written language of the contract regardless of the actual intent of the parties, *Abdelrhman*, 76 A.3d at 888, this Court finds that the plaintiff settled "all claims . . . for all costs, including attorney's fees, incurred in this action," January Judgment at 1, and the plaintiff cannot, therefore, recover attorneys' fees beyond the amount contemplated in the January Judgment for the period prior to January 27, 2014.

The policy underlying Rule 68 also militates against the plaintiff's position. The plaintiff's logic is that since the plaintiff had lost its claim regarding NSPD 54 on jurisdictional

10

grounds, the plaintiff was not entitled to fees pertaining to its pursuit of the document and the defendant's Offer could not have encompassed that claim. *See* Pl.'s Reply at 7–8. By seeking nearly $22,000 in additional fees for the period covered by the January Judgment, the defendant correctly points out that the plaintiff is seeking now to "undo the Judgment already entered." Def.'s Opp'n at 8. Thus, in addition to being contrary to the plain terms of the agreement, the plaintiff's argument is contrary to the purpose of Rule 68 to "encourag[e] settlement . . . [by] enhanc[ing] both defendants' incentive to extend Rule 68 offers and plaintiffs' incentive to accept them." *Tunison v. Cont'l Airlines Corp.*, 162 F.3d 1187, 1193 (D.C. Cir. 1998). Consequently, the plaintiff's Motion for Fees prior to the date of the defendant's Offer of Judgment, January 27, 2014, is denied.[4]

### C. The Plaintiff Is Entitled To Attorneys' Fees For The Period After January 27, 2014

This determination does not end the inquiry, however, since the bulk of the fees and costs the plaintiff seeks were incurred between February 2014 and December 2014. *See* Pl.'s Mot. Ex. 1 at 1–2; Pl.'s Reply at 22. The Court first determines if the plaintiff is entitled to attorneys' fees under the *Tax Analysts* factors before turning to a determination of the amount of those fees.

#### 1. *The Agency's Rationale For Withholding NSPD 54 Was Not "Correct As A Matter Of Law"*

As stated previously, *see supra* Part III.A, the defendant contends that the plaintiff is not entitled to attorneys' fees because the defendant's "withholding of NSPD 54 was correct as a matter of law" because "this Court has already held that, granting NSA summary judgment 'as it pertains to NSPD 54.'" Def.'s Opp'n at 11. If the defendant were correct, this finding would

---

[4] The defendant argues that the plaintiff's mere attempt to seek these costs warrants dismissal of its entire fee petition as a sanction. *See* Def.'s Opp'n at 9–10. While the plaintiff's argument is erroneous, it is not frivolous, nor does it appear to be an attempt to "egregiously overbill the Government," *id.* at 10, for costs incurred in what was, ultimately, a successful quest for the release of NSPD-54. Thus, the Court declines to impose the sanction of dismissing the plaintiff's fee petition.

11

end any further consideration of the plaintiff's fee petition, since "[i]f the Government's position is correct as a matter of law, that will be dispositive." *Davy*, 550 F.3d at 1162. The defendant, however, is not correct, for at least three reasons.

First, in vacating *EPIC I* prior to a decision from the D.C. Circuit, the defendant and plaintiff agreed to erase any determination as to the propriety of the defendant's withholding. In effect, the parties returned to the status quo *ante*, when no Court had considered whether the defendant's grounds for withholding NSPD 54 were justified. At least at this stage in the proceedings, then, no Court has determined that the defendant's position was "correct as a matter of law."

Second, the plaintiff correctly points out that the defendant did not assert the rationale on which *EPIC I* found that NSPD 54 need not be released: that it was not an agency record subject to the FOIA. *See* Pl.'s Reply at 7. Indeed, when the parties were ordered to submit a supplemental briefing schedule to account for this jurisdictional problem, as clarified by the D.C. Circuit's opinion in *Judicial Watch v. U.S. Secret Service*, 726 F.3d 208 (D.C. Cir 2013), the defendant "conferred" with the plaintiff and "agree[d] that no supplemental briefing [was] necessary." Joint Status Report at 1, ECF No. 26. In other words, the basis for the withholding in *EPIC I* as to NSPD 54 was never asserted as the "Government's position" at all and, consequently, the "Government's position" was never found to be correct as a matter of law. *See Davy*, 550 F.3d at 1162.

Third, the position the defendant did assert was not correct as a matter of law. The defendant asserted that NSPD 54 was protected by Exemption 5 to the FOIA, which privilege exempts records from release that are "inter-agency, or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the

agency." 5 U.S.C. § 552(b)(5). The defendant expressly invoked "the presidential communication privilege" for exempting NSPD 54 under Exemption 5, on which *EPIC I* did not opine. *See* Def.'s Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s Summ. J. Mem.") at 1–2, ECF No. 12-1.[5]

The defendant appears to be asking for a *de novo* merits determination of the type expressly contemplated in *Brayton*. The D.C. Circuit held in *Brayton* that "[i]t is undeniable that considering the merits of an agency's nondisclosure decision will frequently complicate the adjudication of motions for attorney fees." 641 F.3d at 528. In evaluating the inconvenience and waste of judicial resources that would accompany these "mini-trial[s] on the merits of the underlying FOIA claim," *id.*, the D.C. Circuit held that the "concern that courts should not dole out fee awards to plaintiffs who bring FOIA lawsuits that cannot survive a motion for summary judgment" outweighs any such considerations. *Id.* The concerns weighed in *Brayton* are especially acute here, since the Court has already ruled on the defendant's summary judgment motion, only to see its ruling vacated at the request of the parties, with the same parties now raising the same contentions in the context of a fee petition.

Fortunately, in the intervening period between *EPIC I* and today, another Judge in this District *did* address the position raised by the defendant in this matter—that presidential directives are exempt from disclosure under the FOIA's Exemption 5—on the merits. In *Center for Effective Government v. U.S. Department of State*, 7 F. Supp. 3d 16 (D.D.C. 2013), Judge Huvelle set forth detailed reasons why the defendant's position that presidential directives were

---

[5] The defendant also invoked Exemption 1 and Exemption 3 to the FOIA, which exemptions allow the withholding of classified information and information exempted by other statutes, respectively, 5 U.S.C. §§ 552(b)(1), (3), to withhold portions of NSPD 54. Def.'s Summ. J. Mem. at 2. Since the defendant released an "unclassified version of NSPD 54," Def.'s Opp'n at 4, and neither party raises the issue, the Court assumes without deciding that all portions of NSPD 54 withheld solely under Exemption 5 were released voluntarily to the plaintiff.

protected by the presidential communications privilege was not correct as a matter of law and such directives were not subject to FOIA's Exemption 5. To the extent that the parties look to have their dispute addressed anew in the context of this fee petition, despite the fact that the plaintiff has already received the document it requested, the Court sees no reason to disagree with the reasoning set out in *Center for Effective Government*. Thus, far from asserting a position that was "correct as a matter of law," the defendant, in light of *Center for Effective Government*, asserted a position that was *incorrect* as a matter of law. Since the fourth factor in the *Tax Analysts* test is only dispositive if the government's position is "correct as a matter of law," *Davy*, 550 F.3d at 1162, and *Center for Effective Government* found that the defendant's position was *incorrect* as a matter of law, no one factor of the *Tax Analysts* test is dispositive and the Court must examine all four of them to determine whether the plaintiff is entitled to a fee award.

### 2. *The Tax Analysts Factors Weigh In Favor Of The Plaintiff*

The four non-exclusive factors to be examined in awarding FOIA attorneys' fees are (1) the public benefit of the information sought; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the defendant's reasonable basis for withholding information. *See Tax Analysts*, 965 F.2d at 1093. As for the first factor, the defendant asserts that the release of the information sought by the plaintiff provides only minimal public benefits because the plaintiff "identifies only one public news account that makes any reference to the release of NSPD 54 whatsoever." Def.'s Opp'n at 12. This media coverage-based argument was advanced and rejected in *EPIC v. FBI*, No. 13-442, 2014 WL 5713859, at *5 (D.D.C. Nov. 5, 2014). In that case, the court found that the release of records related to an FBI facial recognition database was "fairly within the public interest," "expand[ed] public knowledge" about the FBI's system, and "inform[ed] debate regarding how the system and its data [were]

used." *Id.* at \*4.  The defendant argued that the presence of few media articles in the record discussing "the specific records obtained in" the case militated against finding that the public was benefitted by the release of records. *Id.* at \*5.  The court rejected that contention, stating that the "argument focuses the public benefit factor too narrowly," noting that "[t]he relevant inquiry is whether [the plaintiff's] success is *likely* to add to the fund of public information that citizens may use in making vital political choices." *Id.* (emphasis in original; internal quotation marks omitted).

In the instant matter, NPSD 54, and its information regarding national cybersecurity procedures, is "likely to add to the fund of public information" by providing additional information to citizens regarding their government's activities, which is the fundamental purpose of FOIA.  *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1177 (D.C. Cir. 2011).  The defendant's focus on the number of news articles mentioning the released records fails to take into account the likelihood that this information will continue to inform public discourse for years to come. *See Morley*, 719 F.3d at 690 ("[T]he standard for entitlement to attorney's fees does not 'disqualify plaintiffs who obtain information that, while arguably not of immediate public interest, nevertheless enables further research ultimately of great value and interest'" (quoting *Davy*, 550 F.3d at 1162 n.3)).  Thus, the first *Tax Analysts* factor favors the plaintiff.

The second and third factors, the plaintiff's commercial benefit and interest in the information, can be evaluated together.  *Davy*, 550 F.3d at 1160 ("The second and third factors . . . are often considered together").  The defendant makes a cursory attempt to show that these factors do not favor the plaintiff by noting that the plaintiff, a non-profit advocacy organization, is seeking donations through its website and newsletters, which also publicize the plaintiff's success in obtaining NSPD 54's release.  *See* Def.'s Opp'n at 13–14.  The defendant cites to no

15

authority for the proposition that a non-profit organization's success at obtaining the release of documents should be held against it when that same organization mentions such success indirectly in its fundraising appeals. *See id.* Moreover, as the defendant concedes, other Judges in this District have determined that these two factors distinctly favor this plaintiff, since it is a "non-profit public interest research center . . . [that] derived no commercial benefit from its FOIA request or lawsuit," and its stated aims are the public dissemination of information. *EPIC v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (alteration in original). Thus, the second and third factors favor the plaintiff.

As to the fourth factor, as explained above, the defendant's withholding of NSPD 54 was not "correct as a matter of law" and was rejected in *Center for Effective Government*. *See supra* Part III.C.1. Thus, this fourth factor favors the plaintiff. Since all four *Tax Analyst* factors favor the plaintiff, the plaintiff is entitled to a fee award. The amount of that award is reviewed for reasonableness next.

### 3. *Portions Of The Plaintiff's Fee Request Are Disallowed*

In awarding attorneys' fees, courts generally must follow the "lodestar" method, whereby an attorney's reasonable hourly rate is multiplied by the number of hours expended on the litigation. *See SOCM*, 857 F.2d at 1517. The defendant challenges the plaintiff's method of recordkeeping and the reasonableness of the hours expended in litigation.[6]

The defendant alleges that the plaintiff's compilation of its billing records into a single document violates the requirement that the plaintiff submit "contemporaneous time records." Def.'s Opp'n at 14–15. The plaintiff has submitted a consolidated summary of the records and a

---

[6] The defendant also challenged the plaintiff's documentation for its attorneys' status as licensed to practice law. Def.'s Opp'n at 18–21. The plaintiff's declaration of Alan Butler, submitted with the plaintiff's reply resolves those issues and shows that the plaintiff's attorneys were, indeed, licensed attorneys with the claimed years of experience as first submitted by the plaintiff. *See* Decl. of Alan Butler (Dec. 8, 2014) ¶ 7, ECF No. 46-1.

record of the hours spent on the individual dates by each attorney who worked on the matter, along with their billing rate. *See* Pl.'s Mot. Exs. 2–4. These records are, contrary to the defendant's view, exactly the type of recordkeeping required for fee awards. *See Concerned Veterans*, 675 F.2d at 1327. Each attorney involved stated in a sworn affidavit that they calculated the number of hours spent on the matter based on the "contemporaneously-generated time records that [they] recorded throughout the litigation" of this matter. Aff. of Alan Butler ¶ 7, ECF No. 44-6; *see also* Aff. of Amie Stepanovich ¶ 7, ECF No. 44-7 (same); Aff. of David Husband ¶ 7, ECF No. 44-8 (same); Aff. of Ginger McCall ¶ 7, ECF No. 44-9 (same); Aff. of Julia Horwitz ¶ 7, ECF No. 44-10 (same); Aff. of Marc Rotenberg ¶ 9, ECF No. 44-11 (same); Aff. of T. John Tran ¶ 7, ECF No. 44-12 (same). These contemporaneous billing records are reflected in the entries on the consolidated documents submitted by the plaintiff. *See* Pl.'s Mot. Exs. 2–4. Thus, the plaintiff has met its burden, through the submission of affidavits, declarations, and billing records, of establishing the reasonableness of the fees requested. *See SOCM*, 857 F.2d at 1517.

The burden therefore shifts to the defendant to come forward with "specific contrary evidence" to rebut the presumption of reasonableness that inheres in the plaintiff's fee request. *Covington*, 57 F.3d at 1109–10. The only "evidence" the defendant presents is a challenge to the reasonableness of staffing levels on certain "conferences" held by the plaintiff's attorneys. Def.'s Opp'n at 22. It is axiomatic that "trial courts need not, and indeed should not, become green-eyeshade accountants" in examining fee requests since "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). It is, quite simply, unnecessary and a waste of judicial resources to

engage in such a picayune review of the subjective reasonableness of the number of attorneys who participated in a conference call.

Nevertheless, the defendant's allegation that the plaintiff negotiated in bad faith by submitting "exploding" settlement offers on the eve of the deadlines for the submission of status reports to the Court is troubling. *See* Def.'s Opp'n at 24–25. Specifically, the defendant alleges that the plaintiff submitted to the defendant settlement offers that were "placed on the table for less than twenty-four hours, and withdrawn over the objection of [defense] counsel, and before [defense counsel] had had a reasonable opportunity to consider it." *Id.* at 24. These "exploding offers" do not appear to have been submitted with a deadline for consideration, alerting the defendant that it would be required to respond within a set period of time. *See id.* at 5. Disturbingly, both offers of judgment from the plaintiff were extended within 24 hours of a deadline for a submission to the Court regarding the status of settlement discussions. *See id.* Thus, it would appear that these offers were extended for the express purpose of allowing the parties to make representations to the Court that were true at the time the required submissions were made, and were then withdrawn almost immediately after the submission was filed. *See id.*[7]

The plaintiff may, as the defendant admits, place any time limits on negotiations and offers that it wishes. *See id.* at 24 ("EPIC is free, of course, to negotiate however it sees fit."). Nevertheless, such sharp practice of extending and then withdrawing settlement offers subverts the purpose of Rule 68 and the local rules, which are designed to encourage settlement. *See, e.g.*,

---

[7] The plaintiff contends that the defendant's submission of such information violates Federal Rule of Evidence 408, Pl.'s Reply at 21, Pl.'s Sur-Surreply in Response Def.'s Surreply on Pl.'s Mot. at 2–3, ECF No. 50, but the defendant is not submitting such evidence "either to prove or disprove the validity or amount of a disputed claim," FED. R. EVID. 408(a). Rather, the defendant is submitting a general description of the plaintiff's conduct, which the plaintiff does not dispute, *see* Pl.'s Reply at 20–21, to bolster its contention that the plaintiff failed to negotiate in good faith, as required by this Court's Local Civil Rule 7(m), Def.'s Opp'n at 24.

18

*Marek v. Chesny*, 473 U.S. 1, 11 (1985); *Gordon v. Gouline*, 81 F.3d 235, 238 (D.C. Cir. 1996). Moreover, it would appear that the plaintiff's actions were designed to give the appearance of progress in negotiations to the Court, thereby forestalling the setting of a briefing schedule and prolonging this litigation. *See* Joint Status Report at 1, ECF No. 42 ("Fee negotiations are ongoing . . . . Accordingly, the Parties propose that the Court allow two weeks for discussion of fees and costs."); *see also* Def.'s Opp'n at 5 (noting unilateral withdrawal of settlement offers immediately after filing of joint status reports with the Court). Such practices may hinder fee negotiations by increasing the costs to all parties involved and discouraging negotiation in favor of submitting disputes for judicial resolution. The defendant is correct that such tactics should not be countenanced to maintain the letter and spirit of the rules. Def.'s Opp'n at 24–25. Consequently, the Court will disallow all fees sought after the abrupt withdrawal of the plaintiff's first settlement offer on October 1, 2014. Those disallowed fees total $15,187.[8]

\* \* \*

To sum up, the plaintiff is eligible for and entitled to attorneys' fees as a prevailing party under 5 U.S.C. 552(a)(4)(E)(ii)(II). All fees and costs incurred prior to January 27, 2014 are covered by the January Judgment and therefore disallowed. The Court also disallows all fees incurred on and after October 1, 2014, when the plaintiff engaged in what can be charitably described as "sharp practice" in its submission of offers to the defendant that "exploded" after the submission of status reports to the Court indicating potential progress in negotiations. These deductions total $37,174.01.

---

[8] The sum total of bills submitted between October 1, 2014 and the date of this Memorandum Opinion is derived from the plaintiff's Ex. 4 and the total requested in the plaintiff's reply.

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Attorney's Fees and Costs is granted in part and denied in part. The defendant shall pay $31,180.00 in eligible attorneys' fees and costs, which amount constitutes the reasonable fees and costs incurred between January 27, 2014 and October 1, 2014.

An Order consistent with this Memorandum Opinion will issue contemporaneously.

Date: April 8, 2015

_____
BERYL A. HOWELL
United States District Judge